UNITED STATES TRUST Co. *v.* WABASH, ST. L. & P. RY. Co. *et al.*

(*Circuit Court, S. D. Iowa, W. D.* June 2, 1890.)

RAILROAD COMPANIES—INSOLVENCY—JURISDICTION.

The St. L., K. C. & N. R. Co., after executing a mortgage on its line, was consolidated with another road, to form the W., St. L. & P. R. Co. The latter company then executed a mortgage covering all the property of the consolidated lines. The W., St. L. & P. Co. filed its bill in the circuit court of the United States for the eastern district of Missouri, admitting its insolvency, and asking that receivers be appointed. Said court appointed H. and T. receivers, and they took charge of the property of the consolidated lines. Bills of foreclosure of the mortgage by the St. L., K. C. & N. were filed in the state district court of Iowa and circuit court of Missouri, and were each removed to the United States circuit courts for those districts. The trustee in the mortgage given by the St. L., K. C. & N. R. Co. applied to the United States circuit court in Missouri for the surrender to the receiver to be appointed in the foreclosure suit in Iowa by the receivers H. and T. of so much of the property in their possession as was subject to the lien of the mortgage given to complainant. The court granted the order, providing for the use by such receiver, during the time in which the rolling stock of the two companies should be apportioned, of the rolling stock which had been needed in the business of the St. L., K. C. & N. R. Co., and submitting the apportionment of the rolling stock of the

consolidated companies to the courts, in which the foreclosure suits were pending. K. was appointed receiver, by the United States circuit court in Iowa, of the St. L., K. C. & N. R. Co., and possession of the line was delivered to him by H. and T., including certain stock. K. then filed a petition in the circuit court in Iowa, setting forth the order of the circuit court in Missouri as to the apportionment of the rolling stock, averring that it had never been made, praying for an account of the stock belonging to the St. L., K. C. & N. R. Co., and asking that the receivers H. and T. be ordered to deliver the stock belonging to said St. L., K. C. & N. R. Co. A decree was entered deciding that the road was entitled to certain stock, and authorizing the receiver K., or the purchasers of the St. L., K. C. & N. R. Co. at the foreclosure sale, to institute proceedings to ascertain what other rolling stock the company was entitled to. The circuit court in Missouri granted a decree of foreclosure, under which a sale was had to the trustees in the mortgage, who afterwards conveyed the property to the W. R. Co., and the receivers of the court in Missouri delivered the property to it. Afterwards a decree of foreclosure was rendered in the circuit court in Iowa, and a sale was made to a committee of the bondholders secured by the mortgage, who organized the O. & St. L. R. Co. *Held*, that the circuit court in Iowa had no jurisdiction of a controversy between the O. & St. L. R. Co. and the W. R. Co., both of which companies were incorporated under the law of Missouri, as to the damages to be paid for the detention of the cars, and the destruction of a portion thereof while in possession of the receivers appointed by the court at St. Louis, since the court in Iowa never had possession of the property.

In Equity.

Supplemental petition on behalf of the Omaha & St. Louis Railway Company to recover from the Wabash Western Railway Company rental claimed to be due for use of certain rolling stock.

*Theodore Sheldon*, for complainant.

*H. H. Trimble* and *H. S. Priest*, for defendant.

SHIRAS, J. On the 15th day of February, 1879, the St. Louis, Kansas City & Northern Railway Company executed a mortgage on its line of railway, then in course of construction, between Pattensburg, Mo., and Council Bluffs, Iowa. In the following November the named company was consolidated with the Wabash Railway Company, under the title of the Wabash, St. Louis & Pacific Railway Company. In June, 1880, the latter company executed a blanket mortgage covering all the property of the consolidated lines to the Central Trust Company of New York, and in 1883 a further mortgage to the Mercantile Trust Company. In the spring of 1884 the consolidated company filed its bill in the circuit court of the United States for the eastern district of Missouri, at St. Louis, admitting its insolvency, and asking that receivers of the property be appointed to take charge of the property for the protection of all interested therein. To this bill the trustees in the several mortgages were made parties. On the 29th day of May, 1884, the court at St. Louis appointed Solon Humphreys and Thomas E. Tutt receivers according to the prayer of the bill, and they forthwith took possession and control of the entire property of the Wabash, St. Louis & Pacific Railway Company, including that upon the line from Pattensburg to Council Bluffs, which was known as the "Omaha Division of the Wabash, St. Louis & Pacific System." In carrying on the process of disintegration necessary to settle the rights of the various mortgagees holding liens upon the different lines of railway that had been consolidated to form the Wabash system, bills for the foreclosure of the mortgage executed to the United States Trust Company by the St. Louis, Kansas City & Northern Rail-

way Company were filed in the state district court of Iowa and circuit court in Missouri, which were each removed into the United States circuit courts for these districts.   On the 6th day of January, 1886, the United States Trust Company, the complainant in said bills of foreclosure, applied to the United States circuit court at St. Louis for the surrender to the receiver to be appointed in the foreclosure case in Iowa, by the receivers Humphreys and Tutt, of so much of the property in their possession as was subject to the lien of the mortgage given to complainant. The court at St. Louis granted the order sought, which contained the following:

"Provided that, inasmuch as the rolling stock and equipment properly covered and conveyed by said mortgage has been used indiscriminately with the rolling stock and equipment belonging to other divisions of the railway, and inasmuch as an equitable apportionment of the rolling stock and equipment will be made as hereinafter provided, it is further ordered that for the time being, and until a final distribution and apportionment of the rolling stock is made to the said Omaha Division, Receivers Humphreys and Tutt shall permit said trustee, or its representatives, or receiver appointed as hereinafter provided, to have the use of such rolling stock and equipment in kind and amount as has been needed in the business of said Omaha Division during the three months last past. * * * It is further ordered that the matter of the division and equitable apportionment of the rolling stock and equipment between said Omaha Division and said Wabash, St. Louis & Pacific Railway Company be, and the same is hereby, submitted to the courts in which the actions brought by said trustee for the foreclosure of its said mortgage are pending for adjudication and settlement and decree."

On March 1, 1886, Thomas McKissock was appointed receiver by this court of the line known as the "Omaha Division," and possession of this line was delivered to him by Messrs. Humphreys and Tutt, in accordance with the order previously made by the circuit court at St. Louis, including certain stock as contemplated in that order.

The question in dispute between the mortgagees under the blanket mortgage of June, 1880, and the mortgagees under the mortgage of February 19, 1879, as to the rolling stock covered by the latter mortgage, was brought before this court by means of a petition filed by Thomas McKissock, receiver, setting forth the order made by the circuit court at St. Louis in regard to the necessity of an apportionment of the rolling stock, averring that such apportionment had never been made, praying that an account might be taken of the rolling stock belonging to the Omaha Division, and "that the said Wabash receivers may be ordered and decreed to deliver to your petitioner the full amout of the rolling stock and equipment covered and conveyed by the said mortgage, or its equivalent in amount and kind, as this court may determine." Upon the hearing on this petition a decree was entered on the 6th of October, 1887, adjudging that the mortgage of February 15, 1879, covered the rolling stock marked "Omaha Division," and naming certain specific cars which belonged thereto, and further authorizing the petitioner or the purchasers of the Omaha Division at the foreclosure sale, or their successors or assigns, by proceedings in equity or otherwise, to procure an adjudication as to what other rolling stock in addition to that specifically

named was covered by the lien of the mortgage in question; it being further provided that nothing in the decree contained should be regarded as affecting the right of the petitioner or the purchasers of said Omaha Division, or their successors or assigns, from recovering from Humphreys and Tutt as receivers, or any person or corporation succeeding to the possession of the property held by them, a reasonable rental for the use by said receivers or those succeeding them of such rolling stock as might be adjudged to belong to the Omaha Division. The present complainant, the United States Trust Company, thereupon filed a supplemental petition, in which it prayed that it might have the benefit of the original suit and the proceedings thereunder; that an account be taken of the rolling stock belonging to the Omaha Division; that the same be ordered to be transferred to it as the trustee in the mortgage executed February 15, 1879, or to McKissock as receiver; and that said mortgage of February 15, 1879, be declared to be the first lien on such rolling stock. At the March term, 1889, of this court, on the hearing on this petition, it was held that the lien of the mortgage of February 15, 1879, attached to all the engines and cars which in fact had been purchased for the Omaha Division, and had placed thereon the proper designating marks, according to the requirements of the mortgage. See opinion reported, in 38 Fed. Rep. 891. In the mean time in the circuit court at St. Louis, in the original cause therein pending, there was granted a decree of foreclosure on the 6th of January, 1886. In May following, a sale was had under this decree, and the trustees in the mortgages became the purchasers, and a deed of conveyance was executed to them. In April, 1887, the property thus purchased was conveyed to the Wabash Western Company, a corporation created under the laws of the state of Missouri, and the receiver delivered up possession of the property; the said Wabash Company entering into a stipulation to be responsible for all claims existing against said receiver growing out of such receivership. On the 12th day of October, 1886, in the suit pending in this court for the foreclosure of the mortgage of February 15, 1879, a decree was rendered, and under it a sale was made, December 28, 1886; the property being bought by a purchasing committee acting on behalf of the bondholders, who subsequently organized a corporation known as the "Omaha & St. Louis Railway Company," and created under the laws of the state of Missouri.

Upon the filing of the opinion reported in 38 Fed. Rep., a decree was entered, which, among other things, decreed that the mortgage of February 15, 1879, was the first lien upon certain described rolling stock, formerly belonging to the Wabash, St. Louis & Pacific Railway Company, but purchased for and used upon the Omaha Division; that the said Omaha & St. Louis Railway Company was entitled to the possession of the remainder of said equipment belonging to said Omaha Division, and enumerated in the decree, which had not already been delivered over; it being further decreed that the said defendant, the Wabash Western Railway Company, do within 30 days surrender and deliver to the Omaha & St. Louis Railway Company each and all of the cars, engines,

and other rolling stock decreed to belong to the Omaha Division. The ninth paragraph of this decree is as follows:

"(9) That upon the receipt by the Omaha and St. Louis Railway Company of the equipment enumerated in the sixth paragraph of this decree, it is ordered that the said master take an account, and report to this court, the reasonable amount, if any, to be paid to the complainant or the Omaha & St. Louis Railway Company by the Wabash Western Railway Company for the use, from March 6, 1886, to the date of its surrender, of so much of the rolling stock hereinbefore adjudged to belong to the Omaha Division as is in excess in value and in amount of the rolling stock actually used upon said Omaha Division from said March 6, 1886, to the date of the surrender aforesaid; and any further amount due for any equipment covered by complainant's mortgage, and injured or destroyed since March 6, 1886, while in the possession of the said Wabash receivers or said Wabash Western Railway Company; and also any sum that may be found due from said Omaha & St Louis Railway Company by reason of any cars (other than those covered by said mortgage of February 15, 1879) having been heretofore injured or destroyed while temporarily in its possession, or any sum due for use of said cars."

On May 29, 1889, the general managers of the Wabash Western and the Omaha & St. Louis Companies, by agreement in writing, made an exchange of the rolling stock required to be delivered up; the exchange thus made having the effect of performing the requirements of the decree of April 4, 1889, for the delivery of the rolling stock adjudged to belong to the Omaha & St. Louis Railway Company. In this agreement it was further stipulated that all claims of either party, that is, of the Wabash Western or Omaha & St. Louis Railway Companies, for rental, mileage, loss, damage, repairs, or improvements suffered or made prior to June 1, 1889, upon the equipment described in the third paragraph of the decree of April 4, 1889, as well with respect to such equipment as had been in use on the Omaha & St. Louis road since March 6, 1886, should be deemed to be among the issues to be determined upon the reference ordered in the ninth paragraph of said decree. Under the reference ordered in this paragraph of the decree, the master has taken a large amount of testimony, and has filed his report, stating the account between the Wabash Western Railway Company and the Omaha & St. Louis Railway Company; finding a balance due the latter company of $83,613.43. On behalf of the Wabash Western, various exceptions have been filed to the report of the master; and, the matter coming before the court, it is now insisted on behalf of that company that this court has no jurisdiction of the matters sought to be settled by the reference in question, nor of this controversy between the named railway companies, they being both corporations created under the laws of the state of Missouri, and that the issue is a purely legal one, of which a court of equity cannot take cognizance; and it is therefore asked that the reference ordered in the ninth paragraph of said decree of April 4, 1889, be set aside.

From the foregoing statement of facts it will be noticed that from time to time, in the progress of the several foreclosure proceedings, the original parties have ceased to longer have an interest in the litigation, and new parties have been introduced upon the record. Thus, in the consolidated case pending in the court at St. Louis, by the decrees therein rendered,

and the sales based thereon, the interests therein involved have passed to the Wabash Western Company, and in the case pending in this court the interests involved have passed to the Omaha & St. Louis Company. The present position of affairs is correctly stated by counsel for the latter company in the opening statement of his brief herein submitted, which is as follows:

"This proceeding is brought on behalf of the Omaha and St. Louis Railway Company (hereinafter called the 'Omaha Company') to recover from the Wabash Western Railway Company (hereinafter called the 'Wabash Company') for the use of and damage to 732 cars and fifteen engines between March 6, 1886, and May 29, 1889, which equipment, by a final decree entered herein April 4, 1889, was adjudged to be the property of the Omaha Company."

Upon the record the United States Trust Company is a party, but only as the trustee in the mortgage executed by the Omaha & St. Louis Company; and, as the trustee therein, it has not the right to enforce the claim belonging to the mortgagor company. It being an admitted fact that the Wabash Western and the Omaha & St. Louis Companies are both Missouri corporations, it is clear that this court cannot take jurisdiction originally of a matter in litigation between them. Support to the jurisdiction, if it exists at all, must be found in the subject-matter of the suit, or in its relation to the preceding foreclosure proceedings. Viewing the question as a mere matter of damages, to be compensated by a money judgment, there is nothing in the nature of the litigated question which confers jurisdiction on this court. Counsel for complainant present two grounds for sustaining the jurisdiction; the one being that the supplemental bill presents an issue which was necessarily and primarily involved in the original proceedings, and that the supplemental bill is only, therefore, ancillary and auxillary to the original bill, and jurisdiction thereof is therefore to be supported by the jurisdiction of the original proceedings.

The thought presented is that in the foreclosure proceedings the court took possession and control of the mortgaged property, and that all parties becoming interested therein, and desiring to assert their rights to the property, or any portion of it, would have the right to intervene in the court having the original jurisdiction, and could do so irrespective of the citizenship of such intervening parties. Special reliance is placed by counsel upon the case of *Minnesota Co.* v. *St. Paul Co.*, 2 Wall. 609, which in many of its aspects is quite analogous to the present case, and in which it was held that the United States court, in which the original foreclosure proceedings were had, could entertain jurisdiction to determine, as between purchasers at the foreclosure, what portions of the rolling stock belonged to the several divisions of the road that had been separately sold. The main ground upon which the ruling is placed was that, "in contemplation of law, this property is still in the hands of the receiver of the court. If in the hands of the receiver of the circuit court, nothing can be plainer than that any litigation for its possession must take place in that court, without regard to the citizenship of the parties." Jurisdiction in that case was sustained in the United States court on the ground

that the property was to be deemed to be still in the possession and under the control of that court, and for the further reason that the question in dispute arose upon the construction to be given to the orders and decrees of the federal court. The question decided in that case was as to the jurisdiction of the federal court, in which the original foreclosure proceedings were had, and is not directly applicable to the real difficulty presented on this record. I entertain no doubt that all questions touching the possession and other rights in property rightfully in the control of a federal court may be litigated in that court, irrespective of the citizenship of the adversary claimants. As I understand it, however, the court of original jurisdiction in this sense is the United States circuit court at St. Louis. The first foreclosure proceedings were pending in that court. The receiver appointed by that court took possession of the rolling stock on the entire system for the benefit of all interested. In the control and management of the property, the receivers Humpreys and Tutt were subject to the orders of that court. When the foreclosure in this court was begun, the court at St. Louis directed its receivers to allow McKissock, the receiver appointed by this court, to use such rolling stock as might be necessary to run the Omaha Division, pending the final decision of the question of the apportionment of the rolling stock used in common among the several mortgagees claiming priority of lien thereon. As to such rolling stock as in fact came into the possession of this court through the possession of its receiver, McKissock, this court would have jurisdiction to hear and determine the rights of the parties claiming the possession thereof. As to the rolling stock that remained in the possession of Humphreys and Tutt, and as to the questions between parties arising out of the orders of the court putting said receivers in possession of said property, and controlling the disposition thereof, the jurisdiction is in the court at St. Louis. Humphreys and Tutt were not receivers of this court, and the property in their possession has never been in the possession of this court, and no jurisdiction in this court can be based upon their possession of the property, or upon any alleged failure to deliver up possession thereof. Paragraph 9 of the decree of April 4, 1889, requires an accounting of the amount to be paid as rental for the use of cars by Humphreys and Tutt, as receivers of the Wabash, St. Louis & Pacific Railway Company, or by the Wabash Western Company, as the successors thereof, and of any sum due for cars destroyed while in their possession. The ruling in *Minnesota Co.* v. *St. Paul Co., supra*, sustains the right of the Omaha & St. Louis Company to appear in the court at St. Louis for the assertion of any rights it may have to the property in question; but that does not sustain the jurisdiction of the federal court in Iowa.

The real ground taken by counsel for complainant is that Humphreys and Tutt, as receivers of the court at St. Louis, took and held possession of certain rolling stock which in reality belonged to the Omaha Division, and that after the initation of the foreclosure proceedings in this court they should have delivered up the possession of these cars to McKissock, and that, as they did not do so, they must account for the

rental value thereof, as well as for the value of the cars destroyed. If jurisdiction of the present proceeding is to be sustained by reason of the original jurisdiction and possession taken in the foreclosure suit, it is clear that this original jurisdiction is vested in the court at St. Louis. The same result follows if the question is deemed to arise on the orders of the court directing Humphreys and Tutt as to the disposition to be made of the rolling stock coming into their possession as receivers. These orders were made by the court at St. Louis, and it is the tribunal to settle the questions arising thereon. This court did not have the possession or control of the property during the time rental for its use or damages for its destruction are claimed, nor did it have possession thereof when the present proceedings were brought. There is nothing, therefore, upon which to found a valid claim to jurisdiction on the ground that this court has or ever had jurisdiction of the property, for the use of which rental is claimed.

The second ground of jurisdiction suggested by counsel is that the proceeding by supplemental petition by which the question of what property was covered by the mortgage of February 15, 1879, was presented to this court, was, in effect, an equitable suit in replevin; and that, under the Code of Iowa, damages for the unlawful detention of property are recoverable in the replevin suit; and that the court, having taken jurisdiction to construe the mortgage, and determine what property was subject to the lien thereof, should proceed to settle the question of damages, and thus save further litigation. The action of replevin is based upon the right to the possession, and does not necessarily involve the question of title. It is too clear to need any elaboration that this court could not have entertained an action in replevin, on part of its receiver, to recover possession of the cars in question from the receivers appointed by the St. Louis court. They were rightfully in possession of the property, regardless of the ultimate question of the priority of the liens of the respective mortgages. The proceeding in this court was not in the nature of replevin to recover mere possession, but to settle the question of the titles derived from the sales under the respective foreclosure decrees. The pleadings framed to present the issues did not present the question of rental for the use of the cars, nor of damages for cars destroyed, nor of the wrongful detention of the cars by Humphreys and Tutt. The question of title having been finally closed by the decree of April 4, 1889, and the property having been apportioned by agreement of the parties in satisfaction of that decree, there is nothing in the nature of a replevin suit pending giving this court jurisdiction to now adjudicate on a question of damages for the use or destruction of any of the property. The argument based upon the assumption that the proceedings were in the nature of proceedings *in rem*, and that the court, having once acquired jurisdiction, will proceed to do complete justice between the parties, must fall, for the reason that this court has not now, and never did have, possession of the property. Possession was originally taken by the court at St. Louis; and, so far as the cars which it is claimed were wrongfully detained by the Wabash receivers are concerned, they never passed into

the possession of this court, but, so far as delivered at all, were delivered directly to the Omaha & St. Louis Company.    I appreciate the force of the suggestion that it is highly desirable to end all these questions promptly, but that consideration can have no weight when the jurisdiction of the court is challenged.

I have given the arguments of counsel full consideration, but I can find no substantial ground to uphold the jurisdiction of this court to hear and determine the issue sought to be presented upon the questions raised by the ninth paragraph of the decree of April 4, 1889.    When that reference was ordered, the question of jurisdiction as between citizens of the same state was doubtless not considered.    Being satisfied that the court is without jurisdiction to proceed as between the parties now before the court, the order will be that the reference made under paragraph 9 of the decree in question be set aside, and that the proceedings thereon be dismissed, at cost of complainants therein, without prejudice to their right to proceed in a court of competent jurisdiction.