## McINTOSH *v.* SMITH.

Where the record of a judicial partition from another State, properly authenticated, is offered in evidence, any objection to it as not being a complete transcript of all the proceedings. or on the ground that the partition is of no effect, not having been homologated, goes to its effect and not to its admissibility.

Where a party is present at the trial he may be ordered to answer interrogatories *instanter*, though then propounded to him for the first time, where the questions require no recourse to books or papers.

The provision of art. 3491 of the Civil Code. that "prescription is suspended during marriage in every case when the action of the wife may be prejudical to the husband," must be construed with reference to the french text. That article is taken from the Code Napoléon, and its meaning is settled in the jurisprudence of France, as embracing all cases in which the action of the wife would, if maintained, give the defendant, or any other person, a right of action against the husband.

Though a wife suffer her property to be sold to pay her husband's debts,without opposition, she will not be thereby precluded from reclaiming it. The law presumes that she was prevented by her husband from asserting her rights.

Where, by agreement of counsel, a jury is permitted to separate after the adjournment of the court, the defendant cannot complain that, after having sealed their verdict as directed by the court, the jurors separated for the night, and that, after their verdict was delivered into court the next morning, they were sent out again, with the papers of the suit, to make the verdict more explicit.

In an action by a wife against the purchaser of slaves claimed as paraphernal property, bought by the defendant at a sale under execution, in which the husband is cited in warranty, judgment may be rendered against the defendant for the whole of the slaves and their hire, though the community had been dissolved by the death of the wife *pendente lite;* nor will the death of one or more of the slaves defeat the right to recover their hire while alive, on the ground that eviction was a prerequisite to its recovery.

Acts or omissions which would constitute fraud in other persons, will not necessarily be construed to be fraudulent against married women.

The discontinuance of a suit cannot affect the legal rights of a party.

In questions of title silence does not, in any case, show consent, unless continued during the time necessary for prescription.

Where a purchaser of property sold under execution is evicted, the plaintiff in the execution, cited in warranty, can be condemned to pay legal interest only from the date of the purchase.

APPEAL from the District Court of St. Mary, *Overton,* J. *Splane,* for the plaintiff. *Dwight,* for the defendant. *Gibbon,* for *Barron,* cited in warranty. The judgment of the court was pronounced by

ROST, J. The plaintiff claims, as her paraphernal property, certain slaves sold under execution to satisfy debts of the community existing between her and her husband, and purchased by the defendant. The defendant cited the plaintiff's husband, and the seizing creditors, in warranty. There was judgment against him in favor of the plaintiff, and in his favor against the parties cited by him. After an ineffectual attempt to obtain a new trial, the defendant and one of the seizig creditors appealed. Our attention has been called to several bills of exception which we will briefly notice, so far as it is necessary to do so.

I. The court properly overruled the objection of the defendant to the introduction as evidence of the copy of a record of the Orphan's Court of Adams

county, in the State of Mississippi.* That copy was properly authenticated, and the grounds taken by counsel go to its effect, not to its admissibility.

II. The defendant being present at the trial, the court had the undoubted right to order him to answer *instanter* the interrogatories put to him. He did not require his counsel's advice as to the answers he was to make. He was bound to speak the truth, and was able to do so without previous notice.†

III. The judge correctly charged the jury, that, under art. 3491 of the Louisiana Code, prescription does not run against the plaintiff. The english side of that article provides that prescription is suspended during marriage, in every case, when the action of the wife may be prejudicial to the husband. The french says : " Dans tous les autres cas où l'action de la femme *refléchirait contre le mari.*" The english text must be construed with reference to the french. This article was originally taken from the Code Napoléon, and its meaning is settled by the jurisprudence of France, as embracing all cases in which the action of the wife would, if maintained, give the defendant, or any other person, a right of action against the husband. The present case comes clearly within the rule.

IV. The judge refused to charge the jury that if one stands by and sees, or if one knows of, his property being sold to pay the debts of another, without making opposition, he cannot afterwards recover back the property; and also that a party guilty of fraud and collusion is estopped from having any advantage from his own fraudulent and collusive acts. Supposing those principles to be correct as laid down, about which we express no opinion, they are not applicable to the wife who sees her property sold to pay her husband's debts. If she suffer it to be done without opposition, the law presumes that she was prevented by him from asserting her rights. The legal presumption which excuses her when she commits a certain felony in his company, must avail her also in cases like this. The judge did not err. Hypothetical propositions not applicable to the case at bar, only tend to mislead the jury.

V. From the beginning of the trial the jury were permitted, by an express agreement of counsel, to separate after the adjournment of court. This being the case, the defendant cannot complain that, after having sealed their verdict in the evening, as directed by the court, they separated for the night, and that, when the verdict was delivered into court the next morning, they were sent out again with the papers of the suit, in order to make it more explicit as to the time of the death of two of the slaves, and the amount to be recovered by the defendant from his warrantors. The evidence of the facts which the court below directed the jury to find is before us, and the irregularities complained of would not, if they existed, authorise us to remand the cause.

---

* This record was objected to by defendant, as appears by a bill of exceptions, on the grounds that, " it was not the whole, but only a part of the record; that a material paper, to wit, the will, was wanting; that a part of the record is not admissible in evidence ; that the document purporting to be a copy of a judicial partition, which is not homologated, is no evidence of a partition, and can have no effect as such."

† The defendant objected to the right of the plaintiff to propound these interrogatories, on the grounds : " 1. That, after trial commenced, one party cannot propound interrogatories to another, and require him to answer them during the progress of the trial : 2. That the court cannot require such interrogatories to be answered *instanter* , but can only fix a day when they shall be answered, when the party interrogated will have the whole day to answer: 3. That a party, at the time of trial, cannot propound successive interrogatories to an opponent, and require him to answer them successively until he obtains a satisfactory result."

McIntosh
*v.*
Smith.

The defendant has assigned two errors of law, which he says are apparent on the face of the record: 1st. That the wife of the defendant has died, leaving children, since the institution of this suit, and that her heirs should have been made parties. 2d. That the defendant cannot be made to pay the hire of the slaves that have died.[*] There is nothing in those objections. The defendant has the slaves in his possession, and withholds them from the plaintiff. As head and master of the community, he remains liable for all its obligations. The recourse which the law gives him against the heirs of his wife in case they accept the community, cannot affect the rights of third persons. The death of two of the slaves was a fortuitous event, which cannot affect the right of the plaintiff to their hire.

On the merits the slaves are proved to be paraphernal property, and the law and evidence are clearly in favor of the plaintiff. There is no doubt that the laws intended for the protection of married women should not be so construed as to enable them to commit fraud; but their dependant condition greatly restricts the application of that principle, and we have already had occasion to determine that acts or omissions which would constitute fraud when done or omitted by other persons, would not necessarily be so construed against married women.

The plaintiff was no doubt aware that the slaves had been seized and sold, and it is further shown that she instituted two suits in relation to those slaves, which she afterwards dicontinued. The discontinuance of suits by a party, cannot affect his legal rights; and it is not true, in any case, that, in questions of title, silence shows consent, unless it continue during the time required for prescription, when the law of prescription is applicable. We have already stated that neither the knowledge of the plaintiff that the slaves were sold, nor her presence at the sale, could affect her rights.

We see no error in the judgment so far as the defendant is concerned, except that, under the act of 1839, the claim in reconvention should have been allowed, as far as it was proved. We will therefore amend the judgment, and allow the defendant $330 45 in compensation.

The judgment must also be amended in relation to the seizing creditor, *Barron*. The judgment as rendered charges him with interest at the rate of eight per cent per annum. He is only responsible for legal interest, and the amount which he is to refund is $273, only.

For the reasons assigned, it is ordered that the judgment in this case be amended, so as to allow the defendant a credit of $330 45 on the sum he is to pay for the hire of the slaves in controversy. It is further ordered that the judgment be amended, and *Joseph Barron* adjudged to pay the defendant the sum of $2731, instead of $2771, with interest thereon at the rate of five per cent per annum, instead of eight per cent, from the fifth day of February, 1833, till paid. It is further ordered that the judgment as amended be affirmed; the costs of this appeal to be paid by the plaintiff and appellee.

---

[*] The errors, as assigned, are: "1. That the wife has died since the institution of suit, leaving heirs of age and under age; that her death was suggested in the lower court; that there is judgment against the defendant for all the negroes and the whole of their hire; that there cannot lawfully be a judgment against him for but the half of each; that if a judgment for the whole is sought, the heirs of the wife must be made parties. 2. Defendant cannot be compelled to pay the hire of slaves of which he has not been evicted; eviction is a prerequisite to the recovery of hire; judgment for the hire of the slaves who have died is contrary to law."