Mr. Justice MILLER
delivered the opinion of the court.
The first question raised by the demurrer relates to juris diction.
*634 . For tbe purposes of this question we are to take the facts set up by the bill [his Honor had stated the main ones] and demurred to, as true, and consider whether they make a case for the jurisdiction of the Circuit Court of the District of "Wisconsin, which’ has become successor of the District Court in that district.
The present suit grows immediately out of and is a necessity which arises from the suri, by Bronson, Soutter, and Knapp, to foreclose the Land Grant mortgage; under the decree in which suit the Western Division of the La Crosse and Milwaukie Road was sold, and also a.ll the rolling stock of the company belonging to both divisions, to the Mil-waukie and St. Paul Railway Company. • The present suit is really a continuation of that one. The rights of the parties depend upon the construction which is placed upon the acts of the court in it; and the present bill is necessary in order to have a declaration of what was intended by the orders and decrees made in that suit, and to enforce the' rights which were established by it.
The road and rolling stock, which are the subject-matter of this controversy, were placed in the hands of a receiver in the progress of that suit; and he was in possession of the rolling stock when, by an order of the District Court, made June 12, 1863, in that suit, and a' similar order of the same date, in another suit, it was all delivered to the Milwaukie and St. Paul Railway Company.
At the last term of this court,* we decided that, by the act creating the’ Circuit Court for the District of Wisconsin, the District Court lost its power to make such orders, and that they were void. The consequence of this ruling is, that in contemplation of law, this property is still in the hands of the receiver of the court. If in the hands of the receiver of the Circuit Court, nothing can be plainer than that any litigation for its possession must take,place in that court, Without regard to the citizenship of the parties.† If it has been taken illegally from the custody of the receiver, it is *635 eqi ally clear tbat the court has not lost thereby the jurisdiction over'the property, or the right to determine where it shall go; so far as that right is-involved in that suit. This is' the very object of this bill, and it is rendered all the more, necessary by that which the court has dope, as well as - that which it has failed to do. In the case of Randall v. Howard;* these principles are fully stated as applicable to a proceeding in a State court, and are given as reasons why the Federal court would not interfere; although the parties had the right, so far as citizenship could give it, to litigate in the courts of the United States.
, It is objected that the present bill is called a supplemental bill, and is brought by a defendant in the original suit, which is said to he a violation of the rules of equity pleading; an& that the subject-matter, and the new parties made by the bill,-are not such ás can properly be brought before the court by that class of hills.
But we think that the question is not whether the proceeding is supplemental and ancillary or is independent and original, in the sense -of the rules of equity pleading; but whether-it is supplemental and ancillary or is to.be considered entirely new and original, in the sense which this, court has sanctioned with reference to the line which divides the jurisdiction of the Federal courts from that of the State courts. No one, for instance,'would hesitate to say that, according to the English chancery practice, a bill to enjoin, a judgment at law, is an original bill' in the chancery sense of the word. Yet this court has decided many times, that when a bill is tiled in the Circuit Court, to enjoin a judgment of that court, it is not to be considered as an original bill, but as a continuation of the proceeding at law; so much so, that the court will proceed in the injunction suit without' actual service of subpoena on the defendant, and though he be a citizen of another State, if he were a party to the judgment at law. The case before us is analogous. An unjust advantage has been obtained by one party over - another by *636 a perversion and abuse of the orders of the court, and the party injured comes now to the same court to have this; abuse corrected, and to carry into effect the real intention and decree of the court, and that while the property which is the subject of contest is still within the control of the court and subject to its order.
It is objected that Pratt and White and the Milwaukie and St. Paul Railway Company -were not parties to that suit, and cannot therefore be compelled to yield their right to litigate with a citizen of Wisconsin in the courts of that State.
- Pratt and White are mere nominal parties, who were the agents and attorneys of the corporators composing the Mil-waukie and St. Paul Railway Company, and purchased the property at the marshal’s sale for them. They and the company may both be considered as purchasers at that sale; and it'is in their character of purchasers, and on account of the possession which they obtained on petition of the company, and the rights they claim under that purchase, that they are now brought before the court. If the court has jurisdiction of the matters growing out of that sale, and order of possession, as we have already shown that it has, then it has jurisdiction to that extent of these parties without regard to their citizenship, It would, indeed, be very strange if these parties can come into court by a petition,, and get possession of that which was the subject of litigation, and then when the wrong they have done by that proceeding is to be corrected, they shall be permitted to escape by denying that they were parties to the suit. In the case of Blossom v. The Milwaukie and Chicago Railroad Company* this matter was fully discussed, and it was there held, that a purchaser or bidder at a master’s sale, subjected himself quoad hoc to the jurisdiction of the court, and became so far a party to the suit by the mere act of making a bid, that he could appeal from any subsequent order of the court affecting his interest.†
*637 The objection to tbe jurisdiction must therefore be overruled.
We next proceed to inquire whether the bill makes a case calling for relief
This involves the consideration of the mortgage of complainants in the original suit, and of. several order,s and decrees of the District Court, all of which are the subject of conflicting constructions by the parties and their counsel.
In reference to the roadbed which is covered by these various mortgages, there is no diversity of opinion; but in reference to the rolling stock, it is contended by appellees that these several mortgages were successive liens on all the rolling stock of the company, and by appellant that they are liens only on the rolling stock belonging to, or in some Way identified with, that part of the road included in each mortgage respectively. At first blush it would seem that in a road used continuously as one road, there could be no such definite relation between any particular division of the road and any particular portion of the stock. But as it was competent for the company which owned all the’road and all the stock to assign certain stock to one division, and certain other stock to the other division, when the roads were divided for the purpose of making mortgages, we cannot assume as a fact that there was no such allotment of the rolling stock; but must look to the language of the mortgages themselves, to see if any such intention is expressed. If it is not, then obviously the other view prevails, and the mortgages are successive liens on the whole stock.
The language in the descriptive part of the Palmer mortgage, and that in the corresponding part of the mortgage on the Western" Division, when considered in reference to the rolling stock alone, may not be free from doubt as to its construction. * But when we consider it in reference to the clear purpose of the parties to make the mortgages distinct, and different as to everything else conveyed by them, we con- *638 elude that it was intended that the rolling stock covered by each mortgage was that which was properly appurtenant to each particular division of the road.
It is not so important that we be right in this, however, as we are satisfied that the District Court in the foreclosure suit decided this question; and as that decision is in full force and unreversed, it must conclude the parties.to the present suit, all of whom claim under the decree of the court. '
The complainants in the original foreclosure suit made defendants of all the judgment creditors of the company who had liens subsequent to themselves, and made the Milwaukie and Minnesota Company defendant, who held under the subsequent mortgage to Barnes, with a view to cut off their equity of redemption; but they did not make defendants of Bronson and Soutter, who held a subsequent mortgage on the Eastern Division, and a subsequent lien on the rolling stock, which complainants would also desire to extinguish, if they had believed it covered the same rolling stock which theirs did. By omitting these mortgagees they show their own construction that their mortgage, and that of Bronson and Soutter, did not cover the same stock; which could only be because it was appurtenant to the Eastern Division.
About the time that foreclosure suit was commenced, a suit was instituted in the same court to foreclose the second or Bronson and Soutter mortgage on the Eastern Division; but the holders of the Palmer mortgage were not made defendants to either suit. ■ The two suits progressed pari passu to a final decree; but while the "Western Division went to sale, an appeal stayed proceedings in the Eastern Division case, and no- sale has yet been made under that decree. Very shortly after these suits were commenced, the court made an order of reference in each of them to masters in chancery, who were the same masters in both cases. These references, were for the purpose of ascertaining the amounts due on the bonds, the amounts duo certain judgment creditors, and the amount of rolling stock on the whole road, and the amount included in each mortgage. The language of *639 the order of reference on this latter point in the original suit in this case is as follows:
“And it is further ordered that said masters ascertain and report the whole amount of rolling stock on the road, and that they specify the quantity thereof that is covered by this mortgage, also in the first and second mortgages respectively.”
The reference in the other ease is in language almost identical.
Now it is argued that the object of this order was to ascertain and settle the priorities between these different mortgages. No such inference can be made from its language, for it says nothing about priorities in date, or superiority of lien. There was no occasion or reason for ascertaining those priorities in that suit, for the respective parties were not before the court, and could not be bound by its decree. It would not even bind complainants, because there would be no mutuality in the estoppel. It is an impeachment of the legal attainments of the eoui’t and of the counsel to suppose that they would make a reference to a master to ascertain a fact which could have no influence on the suit, and if passed upon by the court, could affect nobody’s interest in the slightest degree.
But the language of the order clearly implies a different thing. The object is to. ascertain, what is covered by one mortgage to the exclusion of the other; an object which had manifest pertinency to the duty which the court was called upon to discharge. The judge who made these orders delivered an opinion at the trial, in which • he decides that the rolling stock of a railroad is a fixture; and if we suppose him to have considered that which was mortgaged to Palmer and to Bronson and Soutter as a fixture on the Eastern Division, and that which was mortgaged to Bronson, Soutter, and Knapp, as a fixture on-the Western Division, we have a clear idea of what he. wished to ascertain, in view of the decrees he was to make in the two suits.
We have next the report of the masters on this subject, which is as follows:
*640 “We have also ascertained the whole amount of rolling stock on the whole road at the cost price. The amount thereof was, at the date of the filing of the bill of complaint in this cause, $569,635.7.8, and an additional amount of $53,600 has been purchased since'the filing of the bill of complaint, making the whole amount $623,235.78..
“And we have ascertained, and do further report, that of the said rolling stock, forty box cars, amounting, at the cost price thereof, to thirty-one thousand nine hundred and seventy-nine dollars and sixty-four cents, and numbered 330, &c. [giving the numbers], are covered by and included in the mortgage executed to thé complainants as set forth in the bill .of complaint in this cause,, the said cars having been purchased, and by the proceeds of a portion of the bonds to which this mortgage is collateral; and all the remainder of the said rolling stock is covered by and included in the first mortgage upon the said railroad, and in the mortgage upon the said railroad executed to G-. C. Bronson and J. T. Soutter, and bearing date on the- seventeenth day of August, A. D. 1857.”
In the foreclosure suit of the Eastern Division, these same masters reported on the same, day:
“We have ascertained and do .further report, that of said rolling stock, forty box cars, amounting, at cost price thereof, to $31,979.64, and numbered 330, &c., are covered by and included in the mortgage of Bronson, Soutter, and Knapp, and no other;”
and then adds, that the remaining rolling stock is covered by the mortgage to Palmer, and to Bronson and Soutter; that is, the mortgage on the Eastern Division.
It is impossible in examining these reports to doubt that the commissioners understood that they Were directed to' ascertain what rolling stock was covered by each mortgage, in order that only such might be sold under the decree in that case, and that they reported that of alb the rolling stock-on tne road, forty box cars alo.ne were subject .to the mortgage in the present, case, and that all the other stock was subject to the mortgage in the other suit. At all events, *641 they were directed to ascertain what was subject to the mortgage in this suit, and they reported the forty box cars, and did not report any more. This much is beyond dispute from the language of the report in this case. ■
Counsel for complainant excepted to this report. His fourth exception is that instead of certifying as they did, the masters should have reported,
“ That all the rolling stock on said road was covered by and included in the mortgage given to said complainants, and described in their bill of complaint in this cause, and that said mortgage was a first and prior lien on said roiling stock superior to all other liens.”
This exception was overruled by the court, and the report of the masters confirmed so far as this branch of the subject is concerned.
“ We regard this as a judicial decision, that complainant’s mortgage did not cover the rolling stock which was covered by the previous mortgage to Palmer, and that it only covered-the forty box cars, and such proportion of the roiling stock purchased by the receiver as the net earnings of the Western Division bears to the net earnings of the Eastern Division.- This order modifying and confirming the report of the masters settled the rights of the parties, and by that decision, they must stand until it is reversed on appeal, or set aside by some direct proceeding for that purpose.
The final decree ordering the sale proceeds upon the same view of the rights of the. parties. After ordering a sale of the property mortgaged, and copying the language given in the mortgage as' descriptive of what was mortgaged, the decree adds:
“With forty box cars, &c., and such portion or share of the rolling stock purchased and procured by the receiver, costing $147,942.63, as the net revenues of the portion of the road covered by this mortgage bears to the balance or other end of the road, since the appointment of the receiver. The remaining rolling stock is subject to a prior mortgage.”
*642 That is to say, having decided that what is covered by the other two mortgages is not covered by this; it is not subject to sale in this suit.
The marshal, however, who was directed to make the sale instead of a master commissioner, did sell all the rolling stock, and that sale was confirmed by the order of the District Court of May 5, 1863.
It is too clear for argument, that a sale by the marshal, unauthorized by the decree, is without any validity. Does the order of the court confirming the sale make it valid?
Upon principle the question is by no means free from diificuity. We are clear that a sale without a decree to sustain it would be a nullity, and we doubt if a court can make it valid by a mere general order of confirmation. If, however, an issue had been made by exceptions'or other proper pleading, as to the question whether any particular piece of property had been included in the decree, or order of sale, and the court had decided that it was so included, it might be an adjudication upon the construction of the decree which would bind the parties. Nothing of the kind occurred here. There is every reason, on the contrary, to believe, that the court had no suspicion that the marshal had sold more than the decree authorized.
On the 7th day of May, two days after the order of confirmation, the Milwaukee and St. Paul Railway Company, presented their petition for the discharge of the receiver, and for possession of the property which they had purchased. The court thereupon made an order “that the receiver deliver over to said Milwankie and St. Paul Railway Company, the said road and appurtenances between Portage City and La Crosse, and the rolling stock and property specially described in the decreeThe only rolling stock specially described in the decree was the forty box cars, and the proportion of stock purchased by the receiver. The fact that this was ordered to be delivered to the purchasers and no more, is almost conclusive of two things: first, that the judge understood his decree and previous rulings as we have interpreted them: and, second, that he had -no idea that he had con *643 firmed a sale of all the rolling stock on the road, to the'purchasers at the sale. It is true that over a month later, he ordered the Eastern Division of the road and the remainder of the rolling stock into the possession of the same company. But this was done to enable them to run the whole road as a through route,.on the principle of public policy, and that it was better for all parties concerned. This he declared in an opinion delivered at the- time, and it is substantially indicated in the orders themselves.
In the light of these facts, we cannot give to the order of confirmation in this case the effect of making valid the marshal’s sale, however the rule might be on that subject in other cases. But we do not mean to intimate that in any ease a sale by a marshal, or master in chancery, can be valid, when there is no decree to support it. Cases in this court* would seem to decide that it cannot.
The order of June 12, 1863, delivering possession of this property to the Milwaukie and St. Paul Railway Company, has been declared by this court to be void for want of jurisdiction, and has been set aside by the court which made it. It therefore affords no support to defendants in this claim to the rolling stock in dispute.
We have thus examined with care and patience the mortgage, and the various orders and decrees of the District Court, on which the claim of the Milwaukie and St. Paul Railway Company to the ownership of this property depends. There is in all of them some want of clearness and precision, including the mortgage itself. Before the court ordered the sale, it should have made clear all these ambiguities. It evidently attempted to do so, and we think if it has not in all cases effected that purpose fully, it has furnished the criteria by which it can be done. And although the language of its orders is not always free from doubt, we have been able to satisfy ourselves of the court’s intentions.
The title of appellant is clear on the record, unless it has *644 been divested by these proceedings. We think that they do not confer title to the rolling stock on the Milwaukie and St. Paul Railway Company, nor divest the appellant, except as to the forty box cars, and the proportion of the stock purchased by the receiver, which the net earnings of the Western Diyision hore to the net earnings of the Eastern Division, and that they also decide that the mortgage under which they claim, did not include any more.
ORDER oe tiie Circuit Court sustaining the demurrer to complainants’ bill, and the decree of the com*t dismissing it, reversed, and the case remanded to. that court for further proceedings not inconsistent with this opinion.

 Bronson v. La Crosse Railroad Company, 1 Wallace, 405.

 Freeman v. Howe, 24 Howard, 460.

 2 Black, 585.

 1 Wallace, 635.

 De la Plaine v. Lawrence, 10 Paige, 602; Calvert on Parties to Suits in Equity, pages 51, 58, and note to page 61.

 Shriver v. Lynn, 2 Howard, 43; Brignardello v. Gray, 1 Wallace, 627.

 This sentence in italics and between the indices — or the exact form of it — was the cause of one main difficulty in the case.