SARRAZIN v. W. R. IRBY CIGAR & TOBACCO CO., Limited.

(Circuit Court of Appeals, Fifth Circuit. April 11, 1899.).

No. 788.

1. JUDGMENT AS EVIDENCE—PROOF OF ASSIGNMENT IN INSOLVENCY.
    Under the law of Louisiana, a judgment accepting a cession of a debtor's property in insolvency proceedings is final, and can only be set aside by an appeal, or in an action of nullity.

2. EVIDENCE—ADMISSIBILITY OF PART OF JUDICIAL RECORD.
    It is the settled rule in Louisiana that the production of the entire record in insolvency proceedings is unnecessary, where it is sought only to prove a single fact, or a certain part of such proceedings.

3. GENERAL ASSIGNMENT BY INSOLVENT—PROPERTY INCLUDED.
    The insolvency law of Louisiana requires the cession of all the property of a debtor seeking to avail himself of its provisions; and an acceptance of such cession by the court vests all the debtor's property in his creditors, whether enumerated in his schedule, or whether he so intended, or not. Such a cession and an acceptance carry with them the property in a trade-mark, unless it is strictly personal, so as not to be assignable.

4. TRADE-MARKS—ASSIGNABILITY.
    A registered trade-mark for a brand of smoking tobacco, the only essential feature of which is the name of the brand, is not personal to the individual registering it, but may be transferred.

5. SAME—REGISTRY ACT—EFFECT ON TRANSFER.
    The registry of a trade-mark under the act of March 3, 1881, confers no property rights similar to those acquired under the patent or copyright laws, which are grants by the United States, but merely brings pre-existing rights which the proprietor may have at common law within the cognizance of federal courts in cases wherein it is alleged in the pleadings that such trade-mark is used in connection with commerce with foreign countries or Indian tribes; otherwise, suits relating to trade-marks, whether registered or not, involve no federal question; nor does their registry bring them within the provisions of the patent laws, as to the formalities required for their transfer.

In Error to the Circuit Court of the United States for the Eastern District of Louisiana.

This action was brought by Cheri E. Sarrazin, a citizen of Mississippi, against the W. R. Irby Cigar & Tobacco Company, Limited, a corporation organized under the laws of the state of Louisiana, and domiciled in the city of New Orleans, to recover damages for the alleged infringement of a trade-mark ("King Bee," etc.) for smoking tobacco. The infringement is alleged to have been committed in the years 1896, 1897, and 1898. The plaintiff avers in his petition that he registered his said trade-mark in the United States patent office as provided by the act of congress of March 3, 1881, and that on the 14th day of December, 1886, a certificate of registry was issued to him. It is further averred that, prior to and since the registration of said trade-mark, he has been placing the same upon smoking tobacco and cigarettes, which have a well-known reputation and sale through the United States and Mexico and Central America. The location of the defendant's infringement is nowhere set forth in the petition, except in giving the domicile of the defendant corporation in the city of New Orleans, and there is no averment that the defendant corporation has ever infringed the said trade-mark in trade and commerce with Indian tribes or in foreign countries. The defendant filed three exceptions to the plaintiff's demand, as follows: "(1) This honorable court is without jurisdiction, as a court of law, to hear and determine the case made by plaintiff, and that this action must be dismissed for want of jurisdiction. (2) That the plaintiff's petition fails to disclose any cause of action

against this defendant. (3) That if the said Cheri E. Sarrazin ever had any title to the said trade-mark subsequent to May 26, 1893, which title this defendant denies, the said Cheri E. Sarrazin on the 20th day of the month of June, 1894, took the benefit of the insolvent law of the state of Louisiana, and by proceedings duly filed in the civil district court for the parish of Orleans, styled 'Cheri E. Sarrazin v. His Creditors' (No. 43,051 of the docket of said court), he made a surrender of all of his property to his creditors, and cannot now be heard to maintain this suit, because whatever title he has passes by the said surrender to his said creditors under and by virtue of the proceedings aforesaid." On the trial of the exceptions a jury was waived by stipulation in writing, and the matters of law and of fact contained in the exceptions were submitted to, and tried by, the court. The court found, as a matter of fact, "that on June 20, 1894, the plaintiff, C. E. Sarrazin, made a cession of all his property, under the insolvent laws of the state of Louisiana, in the civil district court for the parish of Orleans, in said state, and that on said day the said cession was accepted by the Honorable F. D. King, judge of said civil district court, for the benefit of the creditors of said plaintiff," and, as matter of law, "that by reason of said cession of property, and the nature and character of the alleged trade-mark set out in the plaintiff's pleadings, and as shown by the exhibits thereof, said plaintiff cannot maintain this suit," and thereupon entered a judgment that the third exception of the defendant be sustained, and the suit be dismissed at plaintiff's cost, without prejudice. On the trial of the case, as shown by the bill of exceptions found in the record, counsel for the defendant offered in evidence, to be read before the court, a certified copy of the petition of the plaintiff, Cheri E. Sarrazin, offering a cession to his creditors in his insolvency proceedings, and a copy of the order of the court accepting the same, to which counsel for plaintiff objected on the ground that the same was only a part of the record, and that the entire record should have been offered, and not a part thereof.

In this court the errors assigned are as follows: "(1) Because the court erred when he permitted only a part of a record to be introduced in evidence, to wit, the petition of the plaintiff in insolvency proceedings before a court of the state of Louisiana. (2) Because the court erred when he ruled that a syndic of an insolvent has control of property not within the borders of the state of Louisiana. (3) Because the court erred when he permitted an infringer of a trade-mark to set up title in an assignee or syndic of an insolvent. (4) Because the court erred when he ruled that a trade-mark registered under the act of congress of 1881, used among foreign nations and Indian tribes, was subject to the laws of the state of Louisiana. (5) Because the court erred when he ruled that a trade-mark registered under the act of congress of 1881 could be transferred in the manner decided, being a violation of a contract and section 8 and articles 3, 6, and 8 of the constitution of the United States. (6) Because the court erred when he ruled that a general assignment in insolvency operated as a transfer of the trade-mark, if said property was not placed upon the schedule of the insolvent, and never claimed by the syndic or creditors of the insolvent, nor in any manner disposed of under the assignment. (7) Because the court erred when he ruled that a debtor was obliged to comprehend in his surrender any property that is not subject to be seized and sold in execution against him. (8) Because the court erred when he ruled that an assignee or syndic in insolvency, or a receiver of all the property of a debtor, appointed under the laws of a state, by virtue of a general assignment or appointment, acquired title in a trade-mark or patent right. (9) Because the court erred when he ruled that personal property of any description could be claimed by a syndic for the benefit of the creditors of an insolvent, until there had been a delivery of said personal property as is required under the laws of the state of Louisiana. (10) Because the court erred when he ruled that a trade-mark of which the name of plaintiff in error formed a part could be assigned, for it is openly trading in the name of another. (11) Because the court erred when he ruled that an assignment would vest the syndic of an insolvent with title to a trade-mark, unless signed in writing in the presence of two witnesses, conveying the specific property or right in said trade-mark, and duly recorded in the United States patent office."

93 F.—40

W. R. Stringfellow and T. M. Gill, for plaintiff in error.

E. H. Farrar, E. B. Kruttschnitt, B. F. Jonas, and Hewes T. Gurley, for defendant in error.

Before PARDEE, McCORMICK, and SHELBY, Circuit Judges.

PARDEE, Circuit Judge (after stating the facts as above). Where there is an issue of fact in the circuit court, and a jury is waived, and the cause submitted to the court, as permitted in sections 649, 700, Rev. St., there is nothing to review in the appellate court, except (1) rulings of the court in the progress of the trial, if excepted to at the time, and duly presented by a bill of exceptions; and, (2) when the finding is special, the review may extend to the determination of the sufficiency of the facts found to support the judgment. Under the jurisprudence of the state of Louisiana, the judgment accepting the cession in insolvency proceedings is a final decree, which can only be set aside by an appeal, or in an action of nullity. State v. Green, 34 La. Ann. 1027. Under the same jurisprudence, it has been settled that the production of the entire record in mortuary and in insolvency proceedings, in order to prove a single fact or date, or a certain part of the proceedings, is not necessary. McIntosh v. Smith, 2 La. Ann. 756; Succession of Stafford, Id. 886; Price v. Emerson, 14 La. Ann. 141; Succession of Broom, 14 La. Ann. 67; Henderson v. Maxwell, 22 La. Ann. 357. It is difficult to see what injury could result to the plaintiff from the introduction of only part of the record, or what advantage would result to either party from the introduction of the whole record. The bill of exceptions does not show what particular issue the certificate was offered to prove, and we can only infer the relevancy of the certificate for any purpose from the issues between the parties. The fact found by the trial judge is to the effect that the plaintiff, Sarrazin, had sold, assigned, and transferred all title and ownership to his trade-mark, if, as a matter of law in the state of Louisiana, such trade-mark was embraced within the property ceded. The law of Louisiana requires a cession of all the property of the insolvent debtor, and, upon acceptance of the cession by the court, vests such property immediately in the creditors. Rev. St. La. § 1791. It seems to be now settled beyond dispute that both in the state and federal courts a cession does include all the property of the debtor, whether the same is mentioned in the schedule of his property, or whether the debtor intended to surrender it, or not. The cession offered, and accepted by the court, vests the property of the debtor in the creditors, in any and every event. Muse v. Yarborough, 11 La. 521; Dwight v. Simon, 4 La. Ann. 490; Bank v. Horn, 17 How. 157; Geilinger v. Philippi, 133 U. S. 246, 10 Sup. Ct. 266.

Every trade-mark is assignable, together with the business in which it is used, unless it is strictly personal. Kidd v. Johnson, 100 U. S. 617; Chemical Co. v. Meyer, 139 U. S. 547, 11 Sup. Ct. 625; Warren v. Thread Co., 134 Mass. 247; Nervine Co. v. Richmond, 159 U. S. 302; 16 Sup. Ct. 30. If a trade-mark belongs to the class of assignable trade-marks, it is transferred, by the operation of an insolvency or bankrupt law, to the assignee, as part of the bankrupt's assets. There is nothing in the petition to show that the plaintiff's trade-mark was

anything but the name "King Bee," which could be in no sense personal.    In an appendix to the bill of exceptions, there appears to be an application for the registry of the plaintiff's trade-mark, wherein the plaintiff states that his trade-mark consists of the words "King Bee." After describing minutely the medals, rosettes, and other details, including his own name as the manufacturer, he adds, "The medals may be omitted and changed at pleasure without materially altering the character of my trade-mark, the essential features of which are the words 'King Bee.'"    This does not describe a trade-mark requiring the skill of a particular individual to be exercised in the manufacture or selection of the goods upon which it is to be used.    See Warren v. Thread Co., supra.

The plaintiff in error, laying great stress upon the registry of his trade-mark, has presented his case as though, because of the alleged registry, it is one arising under the laws of the United States, and as though patents and copyrights and trade-marks are in some wise identical as property rights, and in any assignment and transfer the same statutory rules prevail.    His assignments of error therefore cover a number of propositions which are so well answered in the brief of the learned counsel for the defendant in error that we quote therefrom as follows:

"The plaintiff's counsel attempted in the lower court, and are attempting here, to confound a trade-mark with a patent, and to liken the registry law of March 3, 1881, to the patent acts.    There is no analogy whatever between them.    Patents and copyrights are specific grants made by the congress to inventors and authors under a special clause in the constitution, and the authority of the congress over the same is exclusive.    The congress has no authority over trade-marks, as such, and for this reason the original trade-mark laws of July 8, 1870, and August 14, 1876, were declared unconstitutional and void by the supreme court in The Trade-Mark Cases, 100 U. S. 82.    The court in that case declined to decide whether the congress, under the power to regulate commerce with foreign countries, etc., might, as to such commerce, regulate the trade-marks used in such commerce.    Judge Miller, in deciding the case, used this language on the nature of a trade-mark: 'The right to adopt and use a symbol or a device to distinguish the goods or property made or sold by the person whose mark it is has long been recognized by the common law, and the chancery courts of England and of this country, and by the statutes of some of the states.    It is a property right, for the violation of which damages may be recovered in an action at law; and the continued violation of it will be enjoined by a court of equity, with compensation for past infringement.    This exclusive right was not created by the act of congress, and does not now depend upon it for its enforcement.    The whole system of trade-mark property, and the civil remedies for its protection, existed long anterior to that act, and have remained in full force since its passage.'    In 1881 the congress adopted a law relative to the registry of trade-marks used in foreign commerce and with the Indian tribes.    If this law is constitutional, it must be pitched on the power to regulate commerce.    We have no desire to contest this question here, as it does not pertain to this case.    The statute is extremely narrow, and it does not attempt to cover the infringement of trade-marks used within the United States in state and interstate commerce; and the federal courts have no jurisdiction to enforce any rights or claims under said law, unless it is averred by the plaintiff that the defendant is infringing in the matter of foreign commerce or with the Indian tribes.    Luyties v. Hollender, 21 Fed. 281; Schumacher v. Schwencke, 26 Fed. 818; Graveley v. Graveley, 42 Fed. 265; Ryder v. Holt, 128 U. S. 525, 9 Sup. Ct. 145; Manufacturing Co. v. Ludeling, 22 Fed. 823.    The registry of a trade-mark under this law adds nothing to the right of ownership therein (except jurisdiction in the United States court, of doubtful constitutionality), and takes nothing

away from such ownership (see language of Wheeler, J., in Schumacher v. Schwencke, supra, and of Bond, J., in Graveley v. Graveley, supra). In a suit not pitched upon the statute (i. e. in a suit between citizens of different states, alleging infringement generally, covering state and interstate commerce), the fact that the trade-mark in question is registered, vel non, is a matter of utter irrelevance. The counsel are laboring under the error of confounding the trade-mark, or the right to the same, with the registry thereof, or, rather, with the mere certificate of such registry. Sections 10 and 11 of the act make it as clear as possible that the act does not in any manner 'prevent, lessen, impeach or avoid,' any remedy or right, or 'unfavorably affect any claim to a trade-mark' either before registry, after registry, or even after the term of registry has expired. Nor does this act make registry anything but prima facie evidence of ownership, so that one may be the registered owner, and another the actual owner. It thus appears that trade-marks do not lie in the sphere of patents and patent rights. The latter are governmental grants of exclusive privileges, and the federal government is given sole and exclusive legislative authority over them. The other are mere common-law rights of property in devices used in trade to designate origin, quality, grade, or source of manufacture of certain articles. These rights of property depend on the general fundamental rights of individuals, and the statutes of the different states. If they can be affected by federal legislation at all, it is only within the sphere of commerce between the states, with foreign nations, and with the Indian tribes."

None of the assignments of error are well taken, and the judgment of the circuit court is affirmed.