**AMERICAN DIRIGOLD CORPORATION
v. DIRIGOLD METALS CORPORA-
TION.**

No. 9028.

Circuit Court of Appeals, Sixth Circuit.

Feb. 3, 1942.

C. J. Andre, of Saint Paul, Minn., and A. H. Williams, of Detroit, Mich. (Butzel, Eaman, Long, Gust & Bills, of Detroit, Mich., and Sanborn & Andre, of Saint Paul, Minn., on the brief), for appellant.

A. E. Fixel, of Detroit, Mich. (McLeod, Fixel & Fixel, of Detroit, Mich., on the brief), for appellee.

Before ALLEN, HAMILTON, and MARTIN, Circuit Judges.

HAMILTON, Circuit Judge.

This cause was before us on a former appeal, 6 Cir., 104 F.2d 863, and was remanded with directions to the District Court to hear further evidence in camera.

The controversy involves the use of an alleged secret process for the manufacture of aluminum bronze, by the combination of copper, aluminum, tin and nickel in fixed ratio, blended at a given temperature, and being superior in purity and appearance to any metallurgical alloy theretofore used for the same purposes. The controversy further involves whether appellee is entitled to use exclusively the trade name "Dirigold" under which the product is sold.

The questioned process was discovered by Carl A. Von Malmborg and Carl Molin in 1914, and in 1921 with Von Malmborg's brother, Oscar, they organized a Swedish corporation under the name of Akliebaloget Dirigold Company which acquired the exclusive license to use the process everywhere except in Finland and the Scandinavian countries and at the same time Sven Johnson acquired the exclusive license to use it in those countries. The Swedish Company did not manufacture, its only substantial asset being the license. Under the Johnson license the alloy in question was manufactured and marketed in Europe under the trade name of "Dirigold." Later Malmborg and Molin organized the Dirigold Corporation of Delaware and on February 1, 1924, the Swedish Company gave this corporation an exclusive license to use the process in the United States and Canada, and it adopted and registered in the patent offices of the United States and Canada the trademark "Dirigold" and imported into the United States from the Johnson Company in Sweden products manufactured according to the formula and sold them under the trade name "Dirigold."

In 1926, the Dirigold Corporation of Delaware commenced the manufacture and sale of the product at Kokomo, Indiana. On October 4, 1930, an equity receiver was appointed for the Delaware Corporation in the United States District Court at Indianapolis, which receiver continued the business of the Company. In February, 1931, the stockholders of the Dirigold Corporation authorized its board of directors to effect a reorganization of the Company by forming a new corporation under the laws of Illinois, this corporation to be known as the Dirigold Metals Corporation. It was formed and Malmborg and Molin were directors. A plan of reorganization was perfected and submitted to the United States District Court in Indianapolis, and rejected. The contract of February 1, 1924, between the Swedish Company and the Dirigold Corporation of Delaware provided that if the latter Company should be

liquidated, "all rights, hereby granted shall cease and shall revert to the party of the first part and belong to the latter as if this agreement had not been made."

Fearful that this provision might abrogate the contract, the Dirigold Metals Corporation of Illinois negotiated with the Swedish Company for a new contract and in September, 1931, a new contract was reduced to writing under which the Illinois Corporation acquired the exclusive and unlimited perpetual use of the process in the United States and Canada, subject, however, to the termination "for any reason whatsoever" of the license the Swedish Company had theretofore granted to the Dirigold Corporation of Delaware (then in receivership). Malmborg and Molin, the discoverers of the alleged secret process, joined in this contract as third parties and agreed to all of its terms. The contract was prepared in quadruplicate and signed by the Dirigold Metals Corporation of Illinois and Malmborg and Molin and mailed to the Swedish Corporation for signature, and signed by the officers of that corporation, one copy retained by it and the other three copies mailed to an agent of the Swedish Corporation at Kokomo, Indiana, with instructions that none of the copies of the contract were to be delivered to the Dirigold Metals Corporation of Illinois until it had acquired the assets of the Dirigold Corporation of Delaware in receivership. Internal strife developed among the officers and stockholders of the newly organized Illinois Corporation and the reorganization proceedings in the Federal Court became dormant, but the receiver continued the operation of the Company. On March 18, 1932, the agent of the Swedish Corporation returned to Sweden, but before leaving, delivered the three copies of the contract to a mutual friend of the two Malmborgs, with instructions to deliver it to the newly organized Illinois Corporation upon the receipt from it of its Class C stock certificate issued in the name of the Swedish Company for 20,000 shares and a like certificate for 10,000 shares to Oscar Von Malmborg.

In October 1932, Carl Von Malmborg wrote his brother, Oscar, in Sweden, that the reorganization of the Dirigold Corporation of Delaware by the creation of the new Illinois Corporation should be abandoned and a new corporation formed under the laws of Delaware or some other state and when organized, the contract then being held by their mutual friend should be delivered to it. None of the other stockholders or officers of the old Delaware Corporation or of the newly organized Illinois Corporation or Molin had any knowledge or notice of the correspondence between the two brothers, and Oscar Malmborg was under the impression that the proposed new Company was a part of the reorganization plans of the old Delaware Corporation and had been agreed to by its stockholders and directors and by Molin. Acting under this assumption, on November 11, 1932, Oscar Malmborg cabled his brother, Carl, "you are authorized to make the requested change in the contract."

In January, 1934, Carl Malmborg organized the corporate appellee, the Dirigold Metals Corporation under the laws of Delaware and dominated and controlled it, all of which was done without the knowledge or consent of the other stockholders and directors of the old Delaware Corporation in receivership or the newly formed Illinois Corporation or Carl Molin.

On January 31, 1934, Carl Malmborg had the appellee issue 20,000 shares of its Class C stock to the Swedish Company and 10,000 like shares to his brother, Oscar Malmborg. He delivered them to the escrow agent holding the contract of September, 1931, and this contract was delivered to Carl Malmborg in exchange for the shares. Carl Malmborg changed the date on the contract from September, 1931 to January 31, 1934, and delivered it to the then newly organized appellee, but did not change the word "Illinois" as the state of incorporation to "Delaware," the place of incorporation of appellee.

The escrow agent mailed the stock certificates for the shares to Oscar Malmborg in Sweden, who retained them about six months. Immediately upon his discovery that the contract was not with the successor of the old corporation, he returned them by mail to the escrow agent in Chicago, Illinois. The post office department was unable to locate the addressee and the letter was returned unopened to Oscar Malmborg and he retained the stock certificates about eighteen months, in the meantime corresponding with the receiver of the Delaware Corporation and Molin about its reorganization. The appellant in the meantime having been organized and having acquired the assets of the old corporation at judicial sale, Oscar Von Malmborg returned the stock certificates to the

appellee and the Swedish Corporation passed a resolution cancelling the license theretofore granted by it to the Dirigold Metals Corporation of Illinois which was then in the possession of the appellee under the circumstances here detailed.

Under the foregoing facts, the appellee claims and the court found that it has the exclusive right to the process discovered by Molin and Malmborg in 1914 and also the trademark "Dirigold." Malmborg tried to persuade Molin to join the new Company after its organization, which he refused, telling Malmborg he desired to operate his business independently.

In May, 1934, the Dirigold Metals Corporation of Illinois was dissolved by quo warranto proceedings in that State because of failure to file annual reports and pay taxes according to its laws. The equity receivership of the old Dirigold Corporation of Delaware was continued, but the State of its creation statutorily suspended its charter in 1934 for failure to pay taxes.

In the latter part of 1934, Molin communicated with Oscar Von Malmborg, president of the Swedish Company about reorganization of the old Dirigold Corporation of Delaware in receivership and in November, 1934, the Swedish Company authorized Molin and John E. Frederick, the equity receiver, to effect a reorganization of this corporation by forming a new company to take over its business and assets, including the original 1924 contract. A small interest in the new company was to be set aside to the stockholders of the old and they consented to the plan. Carl Malmborg was invited to join in the formation of the new company but declined, insisting that appellee then had the exclusive license to manufacture and sell under the name "Dirigold" the product of the secret process.

In July, 1935, pursuant to a decree of the District Court for the Southern District of Indiana, all the assets and good will of the old Dirigold Corporation of Delaware were offered at public sale and Molin and his associates acquired them for $35,000 and in August, 1935, they caused to be organized under the laws of Indiana, appellant, the American Dirigold Corporation, and transferred the property purchased at the receiver sale to the new corporation. The Swedish Company consented in writing to a transfer of the contract originally made in 1924 with the old Dirigold Corporation of Delaware to appellant the new corporation. The receivership proceedings in the United States District Court at Indianapolis were closed and appellant continued and expanded the business of the old company at Kokomo, Indiana, and in connection therewith used the trademarks, patterns and designs of the old Delaware Company and sold its products throughout the United States and Canada.

In 1935, after appellant had been in business for more than nine months, appellee established a plant at Barrington, Illinois, and commenced the manufacture according to the formula used by appellant of aluminum bronze metals, sold such products under the same trade name and in the same market. It claimed to be the successor of the old corporation and to own the exclusive right to the use of the alleged secret process and the trademark "Dirigold."

Carl Malmborg, president of appellee, wrote letters to appellant's customers notifying them that it was the sole owner of the alleged secret process and the trademark "Dirigold" and that if anyone else sold products made according to the formula or under the trademark, such person would be held to strict accountability.

This action was instituted by the appellee in April, 1936, to enjoin appellant from using the process and trademarks. Appellant answered, and filed a cross claim in which it insisted it had equal rights to the use of the alleged secret process, and to the trademark.

The court dismissed appellant's cross bill and enjoined and restrained it from the further manufacture and sale of any metal compounds and articles made by or under the alleged secret process covered by the license granted by Aktiebolaget Dirigold, the Swedish corporation in 1924 to the Dirigold Corporation of Delaware and from the further use by it of the trade name "Dirigold."

The issues for decision are (1) Did appellant acquire the alleged secret formula for the manufacture of aluminum bronze under such circumstances as to entitle appellee to an injunction prohibiting the use of the process by appellant; (2) Does the appellee have the exclusive right to use the trademark "Dirigold"?

Because of the presumed advantage to the public, it is the policy of the law to encourage and protect inventions

and the trademarks of business enterprises. If a business is made valuable by the skill and attention of its creator, the good will thus created is recognized by the law as property belonging to the founder and if, in connection with the business, he adopts and publicly uses a trademark, he has a remedy either at law or in equity against those who undertake to use it without his permission. The discoverer of a new and useful invention of any machine or composition of matter upon filing in the patent office a description which will enable an expert to understand and apply the invention thus affording all persons the means of ultimately availing themselves of it, may obtain by patent a monopoly limiting for a given period of time, the use of the discoverer's invention to such persons as he may select and on such terms and conditions as he elects to impose. If the discoverer of the new machine or composition of matter, whether patentable or not, keeps it secret from all except those having a contractual or confidential relationship with him in regard to such machine or process, he may obtain perpetually a monopoly restricting the use of the discovery or invention to such persons as he may select and on such terms and conditions as he elects to impose.

The jurisdiction in equity to interfere by injunction to prevent such a breach of contract or trust when the injury to the discoverer or his assigns would be irreparable and the remedy at law inadequate is so well established as that the citation of authority would be trite. The discoverer who attempts to keep secret his machine or process of manufacture has no exclusive right to it as against the public, who uncovers the secret by fair means, or against those who in good faith acquire knowledge of it without the breach of a contract, or of a confidential relationship with the discoverer. O. & W. Thum Company v. Tloczynski, 114 Mich. 149, 72 N. W. 140, 38 L.R.A. 200, 68 Am.St.Rep. 469; A. O. Smith Corporation v. Petroleum Iron Works Company, 6 Cir., 73 F.2d 531.

The patent and copyright statutes confer upon an inventor or author, the exclusive right to make, use and sell articles embodying his invention or authorship, and any person acquiring by assignment or license an interest in such invention or authorship takes title subject to prior assignments or licenses of which the assignee must inform himself as best he can and at his own risk, but the owner of a secret process not patented has no such exclusive right and a person acquiring by assignment or license an interest in such process, takes it subject only to such prior assignment or transfers which he expressly or impliedly contracts with the assignor to respect. The appellee proceeds in part upon the theory that appellant must respect the contract which appellee obtained from the Swedish Company in 1934. Appellant was in no way a party to that agreement, and there is no fact in the record directly establishing, or from which an inference may be drawn, that appellant came by its knowledge of the formula in an unfair way or that it has committed any fraud or breach of trust in obtaining of using the alleged secret process.

It is conceded by appellee that appellant is selling the genuine resultant of the alleged secret process, and is using the exact trademark under which the product has always been marketed. For the purposes of this case, it may be assumed that the Swedish Corporation had the right to assign an interest in the alleged secret process in whole or in part to appellee, but before appellee is entitled to any relief in a court of equity, it must appear from the facts that appellant has violated some contract it had with appellee or has breached some relation of confidence it had to appellee. There is no evidence in the record supporting any confidential relationship between appellant and appellee. There is no nexus of obligation between appellant and appellee by reason of either of the present contracts. As to the appellant, appellee's contract with the Swedish Corporation is res inter alios acta.

All practices between rivals in business which tend to engender unfair competition are odious and will be suppressed by injunction. This equitable process rests upon the principle that a manufacturer, merchant or trader is entitled to the court's protection against dishonest or perfidious business rivals, but the power of the court only comes into play against the fraudulent or deceitful simulation by a competitor of tokens which tend to confuse the identity or business of the one with the other and against the false representation of facts which tend to mislead the public and divert trade from one to the other.

Appellee, having predicated its cause of action solely on its exclusive contract right

to the use of the alleged secret process, and there being no substantial evidence in the record that appellant has engaged in unfair trade practices of which appellee has a just ground of complaint, appellee must fail unless it has the exclusive right to the use of the trademark "Dirigold."

It is alleged in appellee's bill of complaint that the present product had been manufactured and sold for many years by Dirigold Corporation of Delaware under the name of "Dirigold" which word has a well known meaning in and among the trade in the States of the Union and Canada and it is further alleged that the Delaware Corporation, with the consent of the Swedish Corporation, registered said name in the patent office February 28, 1924. It undertakes to claim title to the trademark by reason of the fact that the Dirigold Corporation became liquidated in the insolvency proceedings heretofore referred to and that by reason thereof, the trademark reverted to the Swedish Corporation and that appellee reacquired it under its contract of January 31, 1934, with that corporation.

■ It is well understood that a trademark is a symbol or device not previously appropriated affixed to a product of a manufacturer, which will distinguish it from articles of the same general nature manufactured or sold by others. There can be no valid trademark in a word which is placed upon an article not for the purpose of indicating origin, manufacture or ownership, but merely as designating quality, class or grade. Manufacturing Company v. Trainer, 101 U.S. 51, 55, 25 L.Ed. 993; Columbia Mill Company v. Alcorn, 150 U.S. 460, 466, 14 S.Ct. 151, 37 L.Ed. 1144.

The provision of the contract on which appellee relies for the reversion of the trademark to the Swedish Corporation states that if the Dirigold Corporation shall be liquidated all rights, trademarks, formulae and processes granted under it shall cease and revert to the licensor. Appellee seems to treat the word "Dirigold" as a generic or descriptive word of the article of trade in question; in other words, that the discoverers by their combination created a distinct and new alloy. If this be true, the word cannot be the subject of a trademark. Appellee also urges that the word is used not only in a generic sense, but to denote the origin or ownership of the articles and at least to this extent is to be treated as a trademark separate and apart from the description of the alloy. Thomas G. Plant Company v. May Company, 6 Cir., 105 F. 375; Prest-O-Lite Company v. Davis, 6 Cir., 215 F. 349.

■ Considering the name "Dirigold" under the circumstances of this case as an appropriate trademark, the uncontradicted evidence shows that the Swedish Corporation had registered it in Sweden and by the licensing agreement of February 1, 1924, granted to the Dirigold Corporation of Delaware the exclusive, unlimited and perpetual right to its use in the United States and Canada. By the express provisions of the contract, the trademark in question became the property of the licensee. The rule of law is well recognized that in a voluntary sale of a business as an entirety, trademarks and trade names, which have been lawfully established and identified with such business, will pass to one who purchases as a whole the physical assets or elements of the business, even though not specifically mentioned in the conveyance. Herring-Hall-Marvin Safe Company v. Hall's Safe Company, 208 U. S. 554, 558, 28 S.Ct. 350, 52 L.Ed. 616.

■ The law make no distinction between voluntary and involuntary sales, and where the trademark involved is not in law a personal one and the transfer is made by operation of law through bankruptcy or a general assignment for the benefit of creditors, the courts have held that, although not specifically mentioned in the proceedings, the trademarks or trade names lawfully identified with the business pass to one who purchases the business substantially as a whole. Richmond Nervine Company v. Richmond, 159 U.S. 293, 302, 16 S.Ct. 30, 40 L.Ed. 155; Klintz v. Marx, 205 Ill.App. 376.

The receiver in the proceedings in the Indiana District Court was directed to sell all of the assets of the Dirigold Corporation in his possession as such receiver, both tangible and intangible, except cash and accounts receivable, and in the receiver's report of sale, it was stated that he had sold for $35,000 all the assets of the Dirigold Corporation described in the order of sale, and in his bill of sale, the receiver stated that he was transferring all of these assets to the purchasers.

■ Appellee urges on us that a trade name can be assigned only with the good

will of the business and that therefore the receiver could not have sold the trademark and good will, because he did not have title to either of them. As we have heretofore pointed out, these intangible assets did pass to the receiver, and the fact that the Dirigold Corporation became defunct and dissolved destroyed neither its good will nor its trademark.

The receiver continuously operated the property as a going concern until the judicial sale. It follows that there was no abandonment of either the good will or the trademark used in the business. Peck Bros. & Company v. Peck Bros. Company, 7 Cir., 113 F. 291, 62 L. R.A. 81.

Appellee also urges that these items were expressly excluded from the sale by the receiver, and refers to a statement alleged to have been made by the receiver at the time of the sale that he was not selling the trademark or the good will of the business.

It is characteristic of a judicial sale that the court's decree of sale specifically describe the property to be sold (Minnesota Company v. St. Paul Company, 2 Wall. 609, 69 U.S. 609, 640, 17 L.Ed. 886, Pilliod v. Angola Railroad Company, 46 Ind.App. 719, 91 N.E. 829) and that the officer conducting the sale has no authority to deviate from the provisions of the decree or order. Williamson v. Berry, 8 How. 495, 49 U.S. 495, 545, 12 L.Ed. 1170. Under this rule, it becomes immaterial as to what statement of exclusion, if any, the receiver made at the sale. The evidence relied on might be sufficient to sustain an objection to confirmation of the sale, but it is wholly insufficient to support a collateral attack thereon. A sale under an order directing an officer to sell as an entirety the property of a corporation, including good will, passes title to the business trademarks of the corporation. Peck Bros. & Co. v. Peck Bros., supra; Sarrazin v. W. R. Irby Cigar & Tobacco Company, 5 Cir., 93 F. 624, 46 L.R.A. 541; Sawilowsky v. Brown, 5 Cir., 288 F. 533; Woodward v. White Satin Mills Corporation, 8 Cir., 42 F.2d 987.

Finally appellee urges that as the license of the Swedish Corporation to the Dirigold Corporation provided that all rights thereunder should cease and revert to the licensor if the licensee was liquidated through legal proceedings, voluntary or involuntary, and as the licensee was in fact liquidated, that the trademark ipso facto reverted to the Swedish Corporation and that therefore appellant acquired no interest in it through the sale of the assets of the defunct corporation. Lawrence-Williams Company v. Societe Enfants Gombault Et Cie, 6 Cir., 22 F.2d 512.

Counsel for appellee contends with considerable skill in argument that the trademark which the Delaware Corporation acquired from the Swedish Corporation was subject to a conditional limitation and that it was accepted by the Delaware Corporation on condition that such corporation remain solvent, on the breach of this condition, the title to the trademark reverted to the licensor. This contention does violence to the contract of conveyance. The Swedish Corporation granted to the Delaware Corporation the exclusive, unlimited and perpetual right to the use of the trademark with no reservation to itself of interest therein. The provision of the contract relied on by appellee for reversion was a condition subsequent which is clearly known to be one which follows the performance of the contract and operates to defeat and annul it, upon the subsequent failure of compliance by either party. The rights flowing from a grant with limitation on the title are quite different from those arising out of a conveyance of either real or personal property on a condition subsequent. In the former the entire estate never vests in the grantee, in the latter the entire estate vests in him with a possibility of reverter on failure to comply with the condition subsequent.

If the transfer be with a conditional limitation of title, a breach thereof will automatically reinvest the title in the grantor. If it be on a condition subsequent, in order for the title to reinvest, the grantor is required to take some affirmative action for the purpose of regaining possession [Bryan v. Bliss-Cook Oak Co., 8 Cir., 178 F. 217], and until such entry or action by the grantor, the quantity of the estate of the grantee is unimpaired, and his possession continues with all advantages belonging to possession. A condition subsequent may be lost or waived by delay or by words or conduct evidencing an intention not to exercise it. Tarkington v. Purvis, 128 Ind. 182, 25 N.E. 879, 9 L. R.A. 607; Pence v. Langdon, 99 U.S. 578,

581, 25 L.Ed. 420; First Federal Trust Company v. First National Bank, 9 Cir., 297 F. 353; Kansas City Life Ins. Co. v. Davis, 9 Cir., 95 F.2d 952.

We cannot agree with the contention made on behalf of appellee that the appointment of a receiver for the Dirigold Corporation of Delaware and its subsequent liquidation, standing alone, terminated the contract between it and the Swedish Corporation, and deprived its receiver of all interest in the trademark. The Swedish Corporation permitted the receiver to use the trademark in the conduct of the business of the Delaware Corporation, took no action at any time to repossess it and consented to its use by the appellant after it had acquired all the assets of the old corporation. These acts are inconsistent with the exercise of its right to claim a reversion of the trademark and adequately support the conclusion that the Swedish Corporation intended to waive that right. Appellant acquired the right to use the trademark in question through the receivership sale and by the consent of the Swedish Corporation.

On the former appeal this cause was remanded with directions to the lower court to hear such additional evidence as the parties offered on (1) whether the trademark "Dirigold" had value when excluded from interstate commerce; (2) whether the dissolution of the Akliebaloget Dirigold Company occurring subsequent to the institution of this action resulted in a reversion of the alleged secret process to its discoverers; (3) whether the formula and secret were in fact secret and not commonly known to the trade.

On rehearing, the lower court found that the trademark did have value when affixed to products sold in intrastate commerce and in the Dominion of Canada and further that while the Swedish corporation dissolved in 1938, such dissolution did not terminate appellee's contract of January 31, 1934. The court also found that the alleged secret process was in fact secret and not commonly known to the trade.

Appellant urges on us that the court's findings in these respects are not supported by substantial evidence. We have concluded from a re-examination of the record, that we were in error in remanding the cause for further evidence and that the case should have been decided on the original record. For this reason, the last-mentioned errors upon which appellant relies are ignored.

After the cause was remanded, appellant filed a supplemental answer in which it alleged that the processes and formulae referred to in appellee's petition and appellant's counterclaim were not in fact secret but were well known to the trade prior to the year 1921, and that the use of the word "Dirigold" as a part of its corporate name, or as descriptive of, or a trademark for its products, had been found to be deceptive, misleading and fraudulent by the Federal Trade Commission, and constituted unfair competition. It further alleged that the Federal Trade Commission had issued its order directing appellee and appellant to cease and desist from using the word "Dirigold" as a part of its corporate name or as a trademark and that appellant had complied with said order and had changed its name to the American Art Alloys, Inc., and had abandoned the use of the trademark "Dirigold."

In view of these allegations, appellant has no exclusive right to the use of the trade name "Dirigold" or the secret process and is entitled to no relief under its original answer and counterclaim. Litigants are estopped by the record unless they are victims of fraud and mistake. Putnam v. Day, 22 Wall. 60, 89 U.S. 60, 65, 22 L.Ed. 764.

The decree is reversed and the cause remanded with directions to the District Court to dismiss appellee's petition and appellant's counterclaim.