ST. JOSEPH UNION DEPOT CO. v. CHICAGO, R. I. & P. RY. CO.

(Circuit Court of Appeals, Eighth Circuit. October 3, 1898.)

No. 1,059.

1. RES JUDICATA—MATTERS CONCLUDED BY JUDGMENT.
    The judgment of a court is an adjudication upon all the matters of law and fact which are essential to support the judgment rendered.

2. SAME—EFFECT OF APPEAL—OPINION OF APPELLATE COURT.
    Where a judgment is affirmed on appeal, but the appellate court construes the pleadings, and holds that but a single issue is tendered thereby, other matters, though pleaded and taken into consideration by the trial court, are not concluded by the judgment.

3. RAILROADS—SALE UNDER FORECLOSURE—RIGHTS OF PURCHASER.
    A corporation purchasing a railroad sold on the foreclosure of a mortgage covering after-acquired property, which continues to use depot facilities the right to which was acquired by the mortgagor by a contract made after the execution of the mortgage, claiming that it succeeded to such right by its purchase, is bound by the contract of its predecessor for the payment of rent.

4. SAME—UNION DEPOT COMPANY—PRACTICAL CONSTRUCTION OF CONTRACT.
    The several railroads entering a city formed a union depot company for their mutual benefit, and not for profit, which constructed a depot and made contracts with the several companies for its use, the rental to be paid by each being its proportionate share of the interest on the cost and the expense of maintenance and repairs. The contracts required the Depot Company to at all times maintain the building and appurtenances in good order and repair, and to keep the same insured. The building hav-

ing been burned, the company constructed a new one, using the insurance money, and adding the remainder of the cost to the rentals during nine months, as an addition to the expense for repairs; and the same was acquiesced in and paid by all the railroad companies interested, without objection. *Held*, that such action was a practical construction of the rental contracts, which bound the parties thereto, and that one company, which operated two roads using the depot, both of which continued to use it after rebuilding, and for one of which it paid, was estopped to claim as to the other that the additional rental was illegal, and not within the contract.

In Error to the Circuit Court of the United States for the Western District of Missouri.

From the record in this case it appears that in the year 1880 the plaintiff in error was incorporated under the laws of the state of Missouri, under the name of the St. Joseph Union Depot Company, for the purpose of constructing and maintaining a union railway depot at the city of St. Joseph, Mo., the corporation being in fact organized by the railway companies then operating lines of railway to St. Joseph. On the 10th day of April, 1888, a written contract for the use of the union depot facilities was entered into between the Depot Company and the Chicago, Kansas & Nebraska Railway Company, a corporation created under the laws of the state of Kansas, and operating lines in Kansas and Nebraska; and on the same day a similar contract was entered into between the Depot Company and the St. Joseph & Iowa Railway Company, then operating a line from Altamont, Mo., to Rushville, Mo., via St. Joseph, it being in these contracts provided that the annual rental to be paid was to be ascertained by dividing the sum of $15,000, which represented the interest on the bonded indebtedness of the Depot Company, and the total amount of the expenses of maintaining the depot, including the taxes thereon, by the number of companies using the union depot. Previous to the execution of these contracts, and under date of May 14, 1886, the Chicago, Kansas & Nebraska Company (which, for brevity's sake, will be hereinafter called the "Kansas Company") executed a deed of trust, in the usual form, of its entire property, rights, and franchises, to the Metropolitan Trust Company of New York, to secure its mortgage bonds; and on the day following, to wit, May 15th, the Kansas Company executed a lease of its road and equipments, constructed and to be constructed, to the St. Joseph & Iowa Railway Company (hereinafter called the "Iowa Company"), for the term of 999 years. On the 29th day of December, 1888, the Iowa Company sold its railway line to the Chicago, Rock Island & Pacific Railway Company, the defendant herein, including in such sale the lease from the Kansas Company, the lease being duly assigned to the Rock Island Company. Default having been made in the payment of the bonds issued by the Kansas Company, suit was brought for the foreclosure of the trust deed executed by that company to the Metropolitan Trust Company; and, under the decree of foreclosure entered in that suit, a sale of the mortgaged property was had, and the Rock Island Company became the purchaser thereof, the master's deed being dated April 30, 1891. Payment to the Depot Company, according to the terms of the contracts between it and the Kansas and Iowa Companies, had been made up to August, 1891; but, after the foreclosure sale of the Kansas line to the Rock Island Company, the latter company, though continuing to use the depot facilities for the trains running over the Kansas lines, refused to make payment therefor, and thereupon, in August, 1892, the Depot Company brought suit against the Rock Island Company, in the circuit court of Buchanan county, Mo., to recover the rental for the period beginning August 1, 1891, and ending October 31, 1892. From the judgment rendered in favor of the Depot Company in the trial court, the case was carried to the supreme court of the state of Missouri, wherein the judgment below was affirmed. See 131 Mo. 296, 31 S. W. 908. After the affirmance of this judgment, the amount thereof was paid to the Depot Company, together with the rental accruing up to February 9, 1895, on which date the depot building was destroyed by fire. The erection of a new building was at once undertaken by the Depot Company, temporary arrangements being

made for the accommodation of the public and the railway companies, and the new building was completed in January, 1896, and has since then been used by all the companies whose trains were run into the building that was burned. The cost of erecting the new building was met by the insurance paid on the building destroyed, and by adding the sum of $200 per month for nine months to the operating expenses charged against each railway company. The Rock Island Company paid the rental, including this additional assessment of $200 per month, charged up against the Iowa Company, but refused to pay the rental and assessment charged against the Kansas Company; and thereupon this action for the recovery thereof was brought in the circuit court of Buchanan county, Mo., whence it was removed by the defendant company to the United States circuit court for the Western district of Missouri. A jury trial being waived, the case was heard by the court, a finding of facts being made, and after due consideration the court found for the defendant for the reasons set forth in the opinion filed, and the Depot Company now brings the case to this court upon a writ of error.

C. A. Morman and Frank Hagerman (O. M. Spencer, W. P. Hall, and Ben J. Woodson, on brief), for plaintiff in error.

L. C. Krauthoff and S. S. Brown (W. F. Evans and F. P. Seebree, on brief), for defendant in error.

Before SANBORN and THAYER, Circuit Judges, and SHIRAS, District Judge.

SHIRAS, District Judge, after stating the case as above, delivered the opinion of the court.

The first question necessary to be considered is the effect to be given to the judgment of the state court of Missouri in the case brought in the circuit court of Buchanan county, in which it was adjudged that the Rock Island Company was liable to the Depot Company for the rentals accruing under the contract with the Kansas Company for the months during which, up to that date, the Rock Island Company had used the depot facilities for the trains belonging to the lines of the Kansas Company, it being contended by plaintiff in error that by the decision and judgment in that case the question of the right of the Depot Company to hold the Rock Island Company responsible for the rentals accruing for the use of the depot facilities for the trains run upon the lines of the Kansas Company under the control of the Rock Island Company according to the terms of the contract between the former company and the Depot Company has been fully heard and determined, and is not open to re-examination in the present case, which is only to recover rentals accruing after the date of those sued for and recovered in the former action. On behalf of the defendant in error it is claimed that the adjudication in the former suit, the same being for the recovery of rentals accruing for a period other than that involved in the present action, can only be held to be binding upon such matters as were in issue in the former suit, and, being so in issue, were actually determined by a decision, in distinction to an expression of opinion obiter; and it is then contended that the only question decided by the supreme court of Missouri in the former case was that the Rock Island Company had no right to use the union depot for the Kansas trains by virtue of the provisions of the contract between the Depot Company and the Iowa Company, and that it is therefore open to the defendant company in this case to litigate the ques-

tion of its rights as a purchaser at the sale based upon the decree foreclosing the trust deed executed by the Kansas Company to the Metropolitan Trust Company, it being claimed that the Rock Island Company, being the purchaser at such foreclosure sale, has the right to continue the use of the union depot for the trains belonging to the Kansas line, without being bound by the terms of the contract by which the right to use the depot for the Kansas trains was acquired.

In addition to the leading cases of Cromwell v. Sac Co., 94 U. S. 351, and Southern Pac. R. Co. v. U. S., 168 U. S. 1, 18 Sup. Ct. 18, counsel for defendant in error cite Russell v. Place, 94 U. S. 606; Nesbit v. Independent Dist., 144 U. S. 610, 12 Sup. Ct. 746; Railroad Co. v. Alsbrook, 146 U. S. 279, 13 Sup. Ct. 72; Keokuk & W. R. Co. v. Missouri, 152 U. S. 301, 14 Sup. Ct. 592; Last Chance Min. Co. v. Tyler Min. Co., 157 U. S. 683, 15 Sup. Ct. 733; McCarty v. Railroad Co., 160 U. S. 110, 16 Sup. Ct. 240; Dennison v. U. S., 168 U. S. 241, 18 Sup. Ct. 57; Douglas v. Kentucky, 168 U. S. 488, 18 Sup. Ct. 199,— which serve to show the varying forms in which the question of res adjudicata may arise, but which do not change the general rule formulated in Cromwell v. Sac Co., and by this court in Southern Minn. Ry. Extension Co. v. St. Paul & S. C. R. Co., 5 C. C. A. 249, 12 U. S. App. 320, and 55 Fed. 690, and reiterated in Southern Pac. R. Co. v. U. S., supra. In the latter case it is said:

"The general principle announced in numerous cases is that a right, question, or fact distinctly put in issue, and directly determined by a court of competent jurisdiction, as a ground of recovery, cannot be disputed in a subsequent suit between the same parties or their privies; and, even if the second suit is for a different cause of action, the right, question, or fact once so determined must, as between the same parties or their privies, be taken as conclusively established, so long as the judgment in the first suit remains unmodified. This general rule is demanded by the very object for which civil courts have been established, which is to secure the peace and repose of society by the settlement of matters capable of judicial determination. Its enforcement is essential to the maintenance of social order; for the aid of judicial tribunals would not be invoked for the vindication of rights of persons and property, if, as between parties and privies, conclusiveness did not attend the judgments of such tribunals in respect of all matters properly put in issue, and actually determined by them."

Counsel for defendant in error seem to contend for the principle that only those matters are properly at issue, within the meaning of these cases, upon which a direct issue is made in the answer of the defendant; but this is clearly not the rule. The judgment of the court is an adjudication upon all the matters of law and fact which are essential to support the judgment rendered. Thus, in Last Chance Min. Co. v. Tyler Min. Co., 157 U. S. 683, 15 Sup. Ct. 733, it is said:

"But a judgment by default is just as conclusive an adjudication between the parties of whatever is essential to support the judgment as one rendered after answer and contest. The essence of estoppel by judgment is that there has been a judicial determination of a fact, and the question always is, has there been such determination, and not upon what evidence or by what means was it reached. * * * Bigelow, in his work on Estoppel, closes a discussion of the question with this observation: 'The meaning simply is that judgment by default like judgment on contest is conclusive of what it

actually professes to decide as determined by the pleadings; in other words, that facts are not open to further controversy, if they are necessarily at variance with the judgment on the pleadings.'"

The pleadings in the suit in the circuit court of Buchanan county are made part of the special findings, and an examination of the petition therein filed shows that it recites the incorporation of the Depot Company; the execution of the several contracts with the Iowa and Kansas Companies for the use of the depot facilities; the lease from the Kansas Company to the Iowa Company of its property and franchises; the sale by the Iowa Company of its property to the Rock Island Company; the continued use of the depot facilities for the trains run over the lines of the Kansas Company, and the payment by the Rock Island Company of the contract rental therefor up to and including the month of July, 1891; the continued use of the depot facilities for the Kansas trains, after that date, but a refusal on part of the Rock Island Company to further pay the rentals, on the ground that the Rock Island Company, as the assignee of the Iowa Company, had the right to the use of the depot for the trains run over the Kansas lines. Upon the facts thus pleaded, the Depot Company in that case prayed judgment against the Rock Island Company for the unpaid rentals up to and including April, 1892. The answer filed by the Rock Island Company admitted the execution of the contracts between the Depot and the Iowa and Kansas Companies, the sale by the Iowa Company to the Rock Island Company, and then set forth the execution of the trust deed by the Kansas Company to the Metropolitan Trust Company, the foreclosure thereof, and the purchase of the property by the Rock Island Company at the master's sale, and further averred that the Rock Island Company had the right to use the depot facilities at St. Joseph for the trains run by it over the lines of the Kansas Company, under the terms of the contract between the Depot Company and the Iowa Company. Upon these issues the case went to hearing, and it was adjudged that the Rock Island Company was liable to the Depot Company for the monthly rentals accruing under the contract between the Depot and Kansas Companies, it appearing that the Rock Island Company had continued to use the depot facilities for the trains run over the lines of the Kansas Company. The case was then carried to the supreme court of the state, and the judgment of the circuit court was affirmed. In view of the fact that the supreme court of Missouri practically confined its opinion to the one question of the rights conferred upon the Rock Island Company through its ownership of the contract between the Depot Company and the Iowa Company, it seems to be assumed by counsel for defendant in error that the effect of the judgment of the circuit court must be limited to the ruling made by the supreme court on this one question. The adjudication that is pleaded in this case and relied on as an estoppel is the judgment of the circuit court of Buchanan county, and not merely the opinion of the supreme court. Under the recognized rule, every fact necessary to support the judgment of the circuit court must be held to have been adjudicated, and therefore no longer open to question between the parties.

Looking at the action heard in the state circuit court as a suit

brought to determine the question whether the Rock Island Company was liable to the Depot Company for the use of the depot for the trains run over the Kansas lines after the latter had passed under the management of the Rock Island Company, there is certainly great force in the contention that the judgment in that case is conclusive on the question of the liability of the Rock Island Company for the rental now sued for, the present suit being brought to recover subsequent installments of rentals accruing under the same contract and facts that were held to create an obligation on the Rock Island Company in the former suit, thus bringing the case within the rule laid down by the supreme court in Lumber Co. v. Buchtel, 101 U. S. 638, Wilson's Ex'r v. Deen, 121 U. S. 525, 7 Sup. Ct. 1004, and Bissell v. Spring Valley Tp., 124 U. S. 225, 8 Sup. Ct. 495. Under the doctrine of these cases, it must be held that unless the Rock Island Company can show that it has been relieved from the liability created against it, as the successor to the Kansas Company, for the use of the depot facilities, which liability was adjudged in the former case, the judgment in the circuit court of Buchanan county is conclusive of the rights of the parties in the present suit. The defense now relied on is the effect to be given to the purchase made by the defendant at the sale under the decree foreclosing the trust deed given on the property of the Kansas Company, it being claimed that thereby a new title to the depot property was acquired by the Rock Island Company, which enables it to avoid the obligations otherwise resting upon it as the successor to the Kansas Company, the suit being between the same parties and involving the same substantial facts.

Although the fact of this purchase was set forth in the answer filed in the former suit, and there is ground for holding that its effect on the rights of the parties was considered and adjudged in that case, yet in view of the fact that the supreme court of Missouri, in construing the allegations of the pleadings in the former suit, ruled that the only issue tendered thereby was the right of the Rock Island Company to use the depot for the Kansas trains under the contract between the Depot and Iowa Companies, we do not feel called upon to extend the adjudication in that case beyond the limit assigned to it by the supreme court of Missouri; it being thus left open to the defendant company to submit for consideration the effect of the title and right it acquired by the purchase at the foreclosure sale, it being now contended that, as the purchaser of the Kansas Company's property at the sale had upon the foreclosure of the trust deed executed by the Kansas Company to the Metropolitan Trust Company, it holds the same freed from all obligation created by the contract between the depot and Kansas Companies, this contention being based upon the fact that the trust deed was executed prior to the entering into the contract between the Depot and Kansas Companies, or, to state the proposition in the language used in the brief of counsel for the defendant:

"The concrete question is whether, notwithstanding the foreclosure of the Kansas Company's mortgage, which was a lien and title paramount to any interest vested in the Iowa Company and its vendees by virtue of the lease made by the Kansas Company, the Rock Island Company continues to be liable upon the Kansas Company depot contract."

It will be remembered that the Kansas Company transferred its property, which included the depot contract, by lease to the Iowa Company; and the latter sold its property, including that covered by the lease from the Kansas Company, to the defendant; and it is through these transfers that the Rock Island Company acquired the right to the use of the depot for the trains run on the Kansas lines.	The contention now made is that the Rock Island Company, by the purchase made at the sale based on the decree foreclosing the trust deed of the Kansas Company to the Metropolitan Trust Company, obtained a new and independent title to the property, including the right to the use of the depot, which is prior and paramount to the claim of the Depot Company.	It is true that the trust deed to the Metropolitan Company was executed before the contract between the Depot and Kansas Companies; but, that being true, it is clear that the lien of the trust deed did not then attach to the property rights created by the depot contract, because the same were not in existence.	If the lien of the trust deed ever attached to the right to use the depot, it could only do so through the clause in the deed relating to after-acquired property; and it is well settled that the lien of the trust deed, in such case, does not attach until the property is acquired as part of mortgaged estate, and will be subject to the rights of third parties existing therein or thereto, when it passes under the lien of the pre-existing mortgage or trust deed.	U. S. v. New Orleans & O. R. Co., 12 Wall. 362; Trust Co. v. Kneeland, 138 U. S. 414, 11 Sup. Ct. 357.

The position of the Rock Island Company is that, as the purchaser at the foreclosure sale, it acquired the right of the Kansas Company to the use of the depot at St. Joseph, but the Kansas Company never had any other right to the use of the depot than that created by the contract between it and the Depot Company, and it held this right subject to the obligation to pay to the Depot Company the rental named in the contract.	So far as the right of the Depot Company to insist upon payment of rental according to the terms of the contract is involved, it makes no difference whether the Rock Island Company is held to be the successor to the rights of the Kansas Company through the lease to the Iowa Company and the sale by the Iowa Company to the Rock Island Company, or through the sale under the decree foreclosing the trust deed executed by the Kansas Company. The fact that the Rock Island Company, by virtue of a transfer to it of the rights of the Kansas Company, has become the successor of the latter company, and, as such, has been using the depot facilities for the trains run over the Kansas lines, is the sufficient foundation of the right of the Depot Company to hold the Rock Island Company liable for the rental accruing under the contract in question.	If the defendant, upon the completion of the purchase made at the foreclosure sale, had wholly abandoned the use of the depot facilities for the trains run over the Kansas lines, it might have had reason for claiming that it intended to take the property free from the obligations arising under the contract between the Depot and Kansas Companies; but this it did not do, but, on the contrary, it continued to use the depot facilities for the Kansas trains, which it would have had no right

to do, except as the successor of the Kansas Company; and, having thus availed itself of the benefits of the contract with the Depot Company, it must respond to the obligations therein contained.

It is urged in argument that this use of the depot facilities by the defendant company was made under the claim asserted under the Iowa contract, and therefore ought not to be held to indicate a purpose to exercise any right under the Kansas contract.   In the answer filed herein, the defendant company avers that in April, 1891, upon receiving the master's deed in pursuance of the foreclosure sale, it took possession of the railway and property of the Kansas Company, and has ever since owned and operated the same, this averment of fact being made as the basis of the claim that the defendant company holds the depot facilities free from all other claims or liens, by virtue of the title conveyed to it by the master's deed; and thus upon the record is found an assertion of title to the depot facilities as the grantee and successor of the Kansas Company.   Furthermore, after the final decision in the supreme court of Missouri to the effect that the defendant company could not maintain the right to a use of the depot at St. Joseph for the Kansas trains under the Iowa contract, but could only do so under the Kansas contract, the defendant company not only continued to use the depot for its Kansas trains, but payment for such use, at the contract rates, was made to the Depot Company up to the time of the destruction of the depot building by fire; and, under the averments of the pleadings and the facts found in this case, it is clear that this continued use of the depot premises for the Kansas trains was made by the defendant company as the grantee or assignee of the rights held by the Kansas Company under its contract with the Depot Company; and it is not now open to the defendant company to repudiate the obligations of the contract, after having so long enjoyed the benefits thereof, and we are therefore of the opinion that the trial court erred in finding, as a matter of law, that the defendant company was not liable to the plaintiff for the rentals sued for.

It is further contended that even though a liability exists against the Rock Island Company for the rentals, according to the terms of the contract, nevertheless there can be no recovery for the increase of $200 for nine months, which was added to the other expense for the purpose of paying off the cost of rebuilding the depot after its destruction by fire.   In the finding of facts filed in the trial court it is stated that the stock of the Depot Company was owned by the railway companies for whose benefit the depot facilities were created, and that the union depot was operated by the plaintiff company, not for profit, but for the accommodation and benefit of the railway companies using the same, it being further found that on May 1, 1886, both the Iowa and Kansas Companies became stockholders in and members of the Depot Company.   It is provided in the contracts entered into between the Depot and the Railway Companies, including the Iowa and Kansas Companies, that the Depot Company should at all times keep and maintain the depot, yards, tracks, switches, and appurtenances in good order and repair, should protect the property by insurance against loss by fire, the cost to be considered part of

the expense of maintenance, it being further provided that; in case the depot building should be destroyed by fire, the railway companies should be relieved from payment of rental unless the depot should be rebuilt or repaired within six months, and, if not so rebuilt, the railway companies might, at their option, surrender possession of the premises, and thus terminate the depot contract; it being further provided therein that the railway companies, in consideration of the use of the depot facilities, should pay·an annual rental, to be ascertained by adding to the sum of $15,000, being the interest on the bonded debt of the Depot Company, the expense of maintaining and operating the union depot, and all repairs thereto, and all taxes thereon, and dividing the aggregate sum by the number of railway companies using the depot facilities from time to time.

Upon the destruction of the depot building, in February, 1895, the railway companies, including the defendant, continued the use of the depot grounds, temporary arrangements being made for the use of a small building for depot purposes; and the depot company undertook the erection of a new building in place of the one destroyed, and, upon its completion, all the companies, including the defendant, have made use thereof. The sum realized from the insurance upon the building burned was not sufficient to pay the cost of rebuilding, and it became necessary to provide for the deficiency, which was done by ·adding $200 per month for nine months to the rental to be paid by each company. In other words, the sum needed, in addition to the insurance money, to complete the rebuilding of the depot, was held to be part of the necessary expense of maintaining and repairing the same, the cost of which, under the terms·of the depot contracts, was chargeable against the railway companies as part of the rental to be paid by them. In the contract between the Depot and Kansas Companies, to the obligations of which the defendant company has succeeded, it is expressly agreed that, as part of the rental, the Kansas Company would pay "its proportion of the expenses of maintaining and operating said· union depot, and all repairs thereto, and all taxes thereon." It is certainly clear that the union depot could not be properly maintained and operated without a depot building, and hence the contract made provision for the rebuilding of the same in case of destruction by fire. The finding of facts shows that the Depot Company was not run for profit, but simply for the benefit of the railway companies, and the Depot Company had no funds for making repairs, for rebuilding, or for meeting the ordinary expenses of running the depot, and no· means for paying these expenses except by charging them up under the contracts, as part of the rentals to be·paid by the railway companies. In view of the peculiar character of the Depot Company and the control over the same exercised by the railway companies, who were in fact the stockholders of the Depot Company, no other conclusion can be drawn than that it was the purpose of the railway companies to have a union depot maintained and operated at St. Joseph for their benefit, this being done, for convenience sake, by organizing a depot company, not for profit's sake, but to operate the union station; it being further understood that the cost of maintaining, operating, and keeping in repair the

station property should be met by dividing the expense among the several railway companies. No other provision was made for meeting the necessary expenses except this plan of dividing the entire expense among the companies, in the form of rental to be paid. In order to properly maintain this union station, it became necessary to rebuild the depot building after its destruction by fire, and such rebuilding was certainly part of the repairs needed in the maintenance of the union depot; and therefore there is good ground for holding that this expense is part of the repairs which the railway companies expressly agreed should be included in the rental to be assessed against them.

That this was the view taken of the situation by the parties in interest is clearly established. As already stated, in the contracts between the Depot and Railway Companies the burden was placed on the Depot Company of maintaining and keeping in repair the station property, including provision for rebuilding the depot in case of destruction by fire; but the only means provided for raising the funds necessary to meet such expenses is the agreement that the proper proportionate share should be charged up against each one of the railway companies using the depot facilities, as part of the rental to be paid. The rebuilding of the depot was under charge of an executive committee of three, appointed from the board of directors of the Depot Company, these directors being representatives of the railway companies interested in the Depot Company. From the finding of facts it appears that, before the completion of the building, it was ascertained that it would be necessary to raise funds in addition to the insurance money, in order to complete the building; and thereupon the executive committee, of which M. A. Low, the president of the Kansas Company, was a member, sent notices to each of the railway companies to the effect that the necessary sum would be made up by adding $200 for nine months to the rental to be paid by each company. It does not appear that the Kansas Company expressed any dissent to this proposition. All the other companies paid the sum thus assessed against them, the amount chargeable to the Iowa Company being paid by the Rock Island Company, the defendant herein. Thus, it appears that all the railway companies, including the defendant herein, have acquiesced in the practical construction put upon the contracts between the Depot and the Railway Companies by the executive committee in charge of the rebuilding of the depot, to the effect that the erection thereof formed part of the repairs of the premises, of which the cost was apportionable between the several railway companies; and it is a familiar rule that when the parties, by their own acts, have put a practical construction upon the terms of a contract existing between them, courts will usually adopt and enforce such construction. Chicago v. Sheldon, 9 Wall. 50; Topliff v. Topliff, 122 U. S. 121, 7 Sup. Ct. 1057; District of Columbia v. Gallaher, 124 U. S. 505, 8 Sup. Ct. 585.

But it may be said that the Rock Island Company did not pay the rental assessed against the Kansas Company, and therefore there is no evidence of acquiescence on its part in the construction put upon

the terms of the contract with the Depot Company. It is expressly found by the trial court that the Rock Island Company paid the assessment made against the Iowa Company for the rebuilding of the depot, and clearly, therefore, it acquiesced in the view taken by the executive committee that the cost of rebuilding would come within the cost of repairs, which the contracts with the Depot Company provided should be assessed as part of the rental to be paid. The Rock Island Company did not pay the rentals accruing under the Kansas contract, for the reason that it asserted a right to the use of the depot for the Kansas trains under the Iowa contract, not because the rentals claimed included the cost of rebuilding the depot. The Rock Island Company admitted that it was bound for the rentals accruing under the Iowa contract, and without demur it paid the additional sum added to meet the cost of rebuilding the depot, thus showing that it acquiesced in the construction put thereon by the executive committee. When called on to pay the rentals under the Kansas contract, it took the ground that it was not bound by that contract in any particular. It is now settled that the Rock Island Company, as the successor to the Kansas Company, is bound to pay the rentals arising under the contract with the Depot Company; and, in determining what sums can be included as rental, the defendant has no cause for complaint if it is held that the Kansas contract, being identical in terms, is to be construed according to the meaning given to the Iowa contract by the action of the defendant itself. The judgment entered by the trial court is therefore reversed, and the case is remanded to the circuit court, with instructions to take such further proceedings, not inconsistent with this opinion, as may be necessary to a final judgment in the case.

SANBORN, Circuit Judge. I concur in the result in this case, on the ground that the only question it presents is res adjudicata by the judgment of the circuit court of Buchanan county, Mo., in the action in that court between the parties to this action to collect prior installments of rent under the contract here in suit, which accrued after the purchase by the Rock Island Company of the property of the Kansas Company under the decree of foreclosure. The question is whether or not the claim of the Rock Island Company can be sustained, that, by virtue of the rights and immunities it acquired by that purchase, it was relieved of liability to pay to the Depot Company the rental stipulated in the contract between the Depot Company and the Kansas Company for trains operated over the railroads it acquired from the Kansas Company by that purchase. In the action in the court of Buchanan county the Rock Island Company expressly pleaded this purchase as a defense to the claim of the Depot Company to recover the rents which accrued under the Kansas contract after that purchase, and the judgment of that court was that it must pay them. No such judgment could possibly have been rendered without a finding and decision by that court that the purchase at the foreclosure sale constituted no defense to the claim of the Depot Company for those rents, and, in my opinion, that adjudication is as complete an estoppel of the Rock Island Company from defending

the claim of the Depot Company for the rents accruing under the contract with the Kansas Company after October 31, 1892, as it is to its claim for the rents accruing between the purchase at the foreclosure sale and that date. The rule is that, in an action between the same parties and those in privity with them upon a different claim or demand, the prior judgment is an estoppel as to those matters in issue or points of controversy upon the determination of which the finding or verdict was rendered; and, since the prior judgment in this case could not have been rendered without an adverse determination of the question presented by the Rock Island Company in this action, I think that that question is not open for consideration here. Board v. Platt, 79 Fed. 567, 571, 25 C. C. A. 87, 91, and 49 U. S. App. 216, 223; Cromwell v. Sac Co., 94 U. S. 351, 352, and the cases cited under it in the opinion of the court.