### CINCINNATI, I. & W. R. CO. v. INDIANAPOLIS UNION RY. CO. et al.

(Circuit Court of Appeals, Sixth Circuit. February 7, 1922.)

No. 3545.

1. **Railroads** ⊕**186—Parties to contract ordered sold on foreclosure may be made parties or permitted to intervene.**

Where a decree foreclosing railroad mortgages included a contract for the use of the facilities of a depot and belt line company in the assets to be sold, but gave the purchaser the right to elect whether it would assume such contract, other parties to such contract might properly have been made parties to the suit in advance of the decree, or permitted to intervene, in order that right of election might be construed and subsequent controversy be avoided.

2. **Courts** ⊕**264(2)—Court foreclosing mortgage held to have ancillary jurisdiction of proceeding to have decree construed respecting purchaser's right of election to assume contracts.**

Where a decree foreclosing railroad mortgages included in the assets to be sold a contract for the use of the facilities of a depot and belt line company, and gave the purchaser a right of election as to assuming such contract, and provided that any party might apply for further relief at the foot of the decree, the court, after the sale and delivery of the possession to the purchaser, but while the suit was still pending, *held* to have ancillary jurisdiction of a proceeding for a construction of the right of election conferred on the purchaser, instituted by parties to the contract who were not theretofore parties to the suit.

3. **Equity** ⊕**114—Intervention after final decree not prohibited.**

There is no inflexible rule forbidding the allowance of intervention, even after final decree.

4. **Railroads** ⊕**194(3)—Decree held to give purchaser no right to adopt contract with depot company in part and reject it in part.**

A contract between a depot and belt line company and a number of railroad companies using its facilities provided for payment by each railroad company of its proportion of a fixed rental. Two of the companies consolidated, and for 13 years paid two shares of the rental. The consolidated company's property was sold on foreclosure, under a decree including the contract in the assets sold, and giving the purchaser a right of election as to assuming the consolidated company's contracts. *Held*, that the purchaser had the option only of adopting or rejecting the contract in toto, and had no right to adopt it so far as signed by one of the constituents of the consolidated company, and reject it so far as

---

⊕For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

rights were conferred by the signature of the other constituent company, for the purpose of avoiding payment of more than one share of the rent.

**5. Courts** ⊛343—**Petition for construction of foreclosure decree held not to violate equity rules respecting interventions.**

Where a decree foreclosing railroad mortgages gave the purchaser a right of election as to assuming the mortgagor's contracts, a petition filed by other parties to a contract, asking the court to construe the decree as not permitting an attempted election to adopt the contract in part and reject it in part, did not contravene equity rule 37 (198 Fed. xxviii, 115 C. C. A. xxviii), requiring an intervention to be in subordination to and in recognition of the propriety of the main proceeding.

**6. Railroads** ⊛194(3)—**Provision in foreclosure decree for election as to assumption of contracts presumed reasonable.**

Where a decree foreclosing railroad mortgages gave the purchaser a right of election as to assuming the mortgagor's contracts, the court is presumed to have intended a just and reasonable, rather than an unjust and unreasonable, provision for election.

**7. Railroads** ⊛194(8)—**Allegations of answer to petition for construction of provision of decree respecting assumption of contracts held without merit.**

Two railway companies, which were parties to a contract for the use of the facilities of a depot and belt line company, consolidated and gave a mortgage, which was subsequently foreclosed at the same time as a prior mortgage by one of the constituent companies. The decrees permitted the purchaser to elect whether it would assume such contract, and the purchaser attempted to elect to assume it only so far as it was binding by reason of the signature of one of the constituent companies. Other parties to the contract filed a petition asking that the option to elect be construed as not permitting such election. *Held*, that allegations in the answer that by the decree in the suit for foreclosure of the prior mortgage the court represented and held out that there had been no merger of the two rental contracts, and that whatever title was acquired to the property of one of the roads under the foreclosure of the subsequent mortgage was cut off by the sale and foreclosure of the prior mortgage, were without merit.

**8. Railroads** ⊛194(3)—**Purchaser at foreclosure sale held not entitled to elect to assume contract only in part.**

Where railroads entering a city from different directions and parties to a contract for the use of a depot and belt line company's facilities consolidated, and received no less favorable treatment than was accorded to the successors of other parties, and were not refused permission to extend their service in the same way as other railroads, a purchaser of their property on foreclosure of the consolidated company's mortgage by a decree permitting an election as to assuming such contract *held* not entitled to assume it only in part to escape liability for part of the rental, because other railroads extending in both directions were required to pay but one rental, or because of the small amount of business transacted and earnings made by it.

**9. Railroads** ⊛194(8)—**Petition for construction of foreclosure decree held not barred by laches or estoppel.**

Where a decree foreclosing railroad mortgages permitted the purchaser to elect as to assuming contracts of the mortgagor, and it attempted to elect to assume such a contract in part, but its position was not acquiesced in by other parties to the contract, and it knew at all times the position taken by such other parties, a petition to have the decree construed as not permitting the attempted election *held* not barred by laches or estoppel.

**10. Railroads** ⊛194(8)—**Court, construing foreclosure decree, held authorized to award recovery of sum found due.**

The District Court rendering a foreclosure decree, having acquired jurisdiction of a subsequent petition for the purpose of determining the rights of the parties under a provision of the foreclosure decree permitting

the purchaser to elect whether it would assume contracts of the mortgagor, *held* to have jurisdiction to award recovery for a sum found to be owing by the purchaser to another party to a contract under the construction adopted by the court.

Appeal from the District Court of the United States for the Southern District of Ohio; John W. Peck, Judge.

Foreclosure suit, in which the Indianapolis Union Railway Company and others filed a petition asking that the purchaser, the Cincinnati, Indianapolis & Western Railroad Company, be required to show cause why it should not make a payment to the petitioners. From an order in favor of the petitioners, the purchaser appeals. Affirmed.

Certiorari denied 257 U. S. ——, 42 Sup. Ct. 462, 66 L. Ed. ——.

Morison R. Waite, of Cincinnati, Ohio (F. J. Goebel, of Indianapolis, Ind., and Waite, Schindel & Bayless, of Cincinnati, Ohio, on the brief), for appellant.

Joseph S. Graydon, of Cincinnati, Ohio, and Joseph J. Daniels, of Indianapolis, Ind. (Maxwell & Ramsey, of Cincinnati, Ohio, Baker & Daniels, of Indianapolis, Ind., and L. J. Hackney, of Cincinnati, Ohio, on the brief), for appellees.

Before KNAPPEN, DENISON, and DONAHUE, Circuit Judges.

KNAPPEN, Circuit Judge. For several years prior to 1883, the Indianapolis Union Railway Company (an Indiana corporation) had been engaged at Indianapolis in operating a union railway depot and union railway tracks for the use and benefit of several railroads entering that city, its properties being owned by the various railroad companies. The Union Railway Company had also acquired a perpetual lease of a certain belt line. On September 20, 1883, an agreement was made between the Union Railway Company and the various proprietary companies referred to[1] (afterwards fully carried out) for the conveyance by the latter to the former of the railroad properties theretofore used by the Union Railway Company, for a perpetual lease of the belt line, for the acquisition by the Union Railway Company of further lands for union depot facilities, and for the erection of a new depot and the construction of the necessary additional tracks appurtenant thereto. A fixed rental for the use of the Union Railway facilities was created by way of interest at 7 per cent. upon the appraised valuation of the Union Railway properties and the belt line lease, including the value of additions and betterments to be made to the Union Railway property from time to time thereafter—this fixed rental to be "from time to time divided into as many equal shares as there are railroad companies using said property, and each company so using the same shall pay one of said shares." There was also express provision that "no abatement shall be made from the fixed rental so to be paid by

[1] The five original proprietary companies, all of whom joined in the agreement, were the Chicago, St. Louis & Pittsburgh Railroad Company, the Jeffersonville, Madison & Indianapolis Railroad Company, the Cincinnati, Indianapolis, St. Louis & Chicago Railway Company, the Terre Haute & Indianapolis Railroad Company, and the Cleveland, Columbus, Cincinnati & Indianapolis Railway Company.

each company, by reason of such company not using either the Union Passenger Depot or the Belt Railway." Subject to certain rights of the proprietary companies, not involved here, the current operation, maintenance, renewal, and repair of the Union Railway property and of the Belt Railway were to be conducted by a board of managers, composed of one representative from each company using the Union Railway property. In addition to the fixed rental referred to, the expenses of operation, maintenance, etc., of the tracks of the Union Railway Company and of the belt line were to be divided among the several companies using each system, "in proportion to such use, on the basis of wheelage." Express provision was made for the admission of seven named nonproprietary companies (in addition to the proprietary companies named) to the "joint use of the said Belt Railway and Union Railway Company property," upon such nonproprietary companies severally signing and sealing a copy of the agreement referred to, the nonproprietary companies not thereby becoming members of the Union Railway Company. The grant of right of joint use of these railway properties was declared "perpetual to the companies accepting the same and executing a certified copy of this agreement." [2]

In consideration of the recited fact that "the large prospective outlay for new and extended facilities as herein contemplated by the Union Railway Company is about to be incurred mainly in the interest of the companies other than the proprietary companies, said companies do each by their acceptance of this grant, and especially by their signing and sealing the certified copy hereof, bind and obligate themselves severally, their successors and assigns, to forever continue in the joint use aforesaid, and subject to and upon the terms and conditions herein stated." Among the seven nonproprietary companies duly executing and accepting the agreement were the Indianapolis, Decatur & Springfield Railway Company, then owning and operating a railroad westerly from Indianapolis, and the Cincinnati, Hamilton & Indianapolis Railroad Company, then owning and operating a railroad east of Indianapolis. August 20, 1906, an amendment was made to paragraph 11 of this agreement in a respect not important here. This amendment was agreed to by the successor of the two signatory nonproprietary railroad companies just mentioned. This entire contract is here known as the contract of September 20, 1883, and August 20, 1906, and is valid under the laws of Indiana. See Act Ind. March 2, 1885 (Burns' Ann. St. Ind. 1914, § 5356 et seq.), which was accepted by the Union Railway Company under the authority of that act.

The Indianapolis, Decatur & Springfield Railway Company (the line west of Indianapolis) was succeeded by the Indiana, Decatur & Western Railway Company, which latter company and the Cincinnati, Hamilton & Indianapolis Railroad Company (the line east of Indianapolis) were in 1902 merged into a new corporation, called the Cincinnati, Indianapolis & Western Railway Company, which gave a so-called

[2] In addition to the five proprietary companies and the seven nonproprietary companies referred to, the contract was executed by an eighth nonproprietary company. The fixed rental was therefore divided into thirteen equal parts, of which each company paid one.

"first and refunding mortgage" upon the properties of the consolidated company (subject to two prior mortgages of the Cincinnati, Hamilton & Indianapolis Railroad Company on the line east of Indianapolis, and subject to a mortgage of the Indiana, Decatur & Western Railway Company on the line west of Indianapolis), the bonds secured by this first and refunding mortgage of the new company to be used in refunding each of these three series of underlying bonds. The bonds of the Indiana, Decatur & Western Railway Company were never refunded. Equitable foreclosure of the "first and refunding mortgage" of the Cincinnati, Indianapolis & Western Railway Company was had in the District Court below, and the mortgaged property sold September 9, 1915 (subject to the prior lien of the Indiana, Decatur & Western mortgage), to a reorganization committee, which assigned its purchase to the newly organized Cincinnati, Indianapolis & Western Railroad Company, the appellant here, to which company conveyance was accordingly made by the master on or about November 30, 1915, the sale having been affirmed by the District Court.[3] Among the items of property specifically ordered by the foreclosure decree in each cause to be sold, and accordingly so sold, was "contract dated September 20, 1883, and amendment of August 20, 1906, under which tracks of the Union Railway Company are occupied in Indianapolis." This concededly refers to the contract here involved.

From the time of the contract of 1883, and until the conveyance under the mortgage foreclosure to appellant, the two lines, respectively east and west of Indianapolis, had each paid one full rental, and during the entire period from the formation of the Cincinnati, Indianapolis & Western Railway Company, in 1902, until the conveyance to appellant company in 1915, the former (the consolidated company) paid two rentals, one by virtue of the original contract of the Indianapolis, Decatur & Springfield Railway Company, and the other by virtue of the contract of the Cincinnati, Hamilton & Indianapolis Railroad Company.

The decree of foreclosure in each case contains a provision giving the purchaser under the foreclosure sale, and his successors or assigns, the right for a period of 30 days after delivery of the master's deed—

"to elect whether or not to assume or adopt any lease or contract made by the defendant consolidated company [the Cincinnati, Indianapolis & Western Railway Company] or its predecessors in title, and such purchaser, his successors or assigns, shall be held not to have adopted or assumed any such lease or contract in respect of which he or they shall have filed a written election not to assume or adopt the same with the clerk of this court within said period of 30 days."

On December 24, 1915, the appellant, under assumed authority of that provision, attempted to reject its liability for more than one rental, by filing in each of the two foreclosure cases a so-called election—

"not to assume or adopt * * * the * * * contract dated September 20, 1883, and the amendment of August 20, 1906, under which tracks of the Union Railway Company are occupied in Indianapolis, in so far as such rights

---

[3] The Indiana, Decatur & Western Railway mortgage was foreclosed at the same time and in the same court, and the sale had under decree in each case, the purchaser thus taking title free from the prior Indiana, Decatur & Western mortgage.

are conferred by the signature of the Indianapolis, Decatur & Springfield Railway Company to said contract. This assignee hereby expressly accepts such contract as made with the Cincinnati, Hamilton & Indianapolis Railroad Company, and desires to accept the benefits of the contract with said company, and the right to occupy the tracks of the Union Railway Company and the Indianapolis Belt Railway Company, therein conferred."

The Indianapolis Union Railway Company and the three proprietary companies[4] which succeeded the five original signatory proprietary companies thereupon filed, in the foreclosure cause in the court below, their petition asking that the defendant be required to show cause why it should not be ordered to make payment to the Indianapolis Union Railway Company of the full amount that would have been payable to that company by the Cincinnati, Indianapolis & Western Railway Company, "if it had continued in the use and enjoyment of the railroad property rights and privileges described in and ordered to be sold by the decree of foreclosure and sale made and entered by the aforesaid court in the above-entitled cause." There was prayer for other and further relief. A motion to dismiss the petition for lack of jurisdiction and for failure to state a cause of action in equity was overruled. Answer was then made on the merits. Upon hearing on pleadings, the District Court denied, upon the merits, defendant's claimed right of election by way of rejecting liability under the contract of the Indianapolis, Decatur & Springfield Railway Company, and held defendant liable to perform the rental contracts of both the Indianapolis, Decatur & Springfield Railway Company and the Cincinnati, Hamilton & Indianapolis Railroad Company, and, after reference to and report of master, adjudged defendant liable upon said rental contracts in the sum of $80,813.64 above the conceded liability upon the one contract of the Cincinnati, Hamilton & Indianapolis Railroad Company. This appeal is from that order.

[1] *Jurisdiction.*—In our opinion the District Court had jurisdiction to entertain the petition in question. The Union Railway Company and the proprietary companies were parties to the contract, the rights under which, on the part of the Cincinnati, Indianapolis & Western Railway Company, had been ordered sold, as part of the assets of the latter company. Both the Union Railway Company and the proprietary companies were thus vitally interested in the effect of that agreement, and thus in the interpretation of the word "contract" as contained in the decree for sale, as respects both description and provision for election. It would have been proper to make these railroad companies parties in advance of the decree, for the purpose of construing the right of election conferred in general terms by the decree, as applied to the contract in question, thus avoiding controversy thereafter (Wabash R. R. Co. v. Adelbert College, 208 U. S. 38, 54, 28 Sup. Ct. 182, 52 L. Ed. 379) ; and the court would have had power to permit intervention by petitioners for such purpose (Krippendorf v. Hyde, 110 U. S. 276, 282, 4 Sup. Ct. 27, 28 L. Ed. 145). Presumably such action would

---

[4] The Cleveland, Cincinnati, Chicago & St. Louis Railway Company, the Pittsburgh, Cincinnati, Chicago & St. Louis Railway Company, and the Vandalia Railroad Company.

have been taken had the controversy been foreseen. As it developed after the sale, appellant regarded the contract as consisting of two separate and independent contracts, one on the part of the Indianapolis, Decatur & Springfield Railway Company, the other on the part of the Cincinnati, Hamilton & Indianapolis Railroad Company, and so construed the contracts and the decree as giving appellant the right to reject either one of the contracts, and by paying one rental to enjoy the benefits which would accrue from compliance with both contracts. The appellees contended that appellant was legally bound to observe both contracts, and to pay both rentals, and that it was without power to reject either contract, and that in so doing appellant was acting "without warrant of law and contrary to the provisions and intent of said decree of foreclosure."

[2] When appellee's petition was filed the foreclosure suit was still open. There was still pending the petition of the Union Railway Company for the enforcement of a lien claimed against the property of the Cincinnati, Indianapolis & Western Railway Company. The final order of distribution had not been made. The decree of the district court expressly declared that "all questions not hereby disposed of are reserved for future adjudication. Any party to this cause may at any time apply to this court for further relief at the foot of this decree"; also that the purchaser had "the right to enter his appearance in this court and to become a party to this cause." Appellant had made itself a party to the record under the proceedings relating to the manner of paying the purchase price bid at the foreclosure sale. True, the Union Railway Company and the proprietary companies, not having been parties to the foreclosure suit, were at liberty to contest elsewhere the effect of the election provision and its construction; but it was highly fitting, and in the interest of orderly administration, that the court which pronounced the decree should construe it.[5] Notwithstanding the property had passed from the possession of the court, appellant, as the purchaser, would have had an undoubted right to apply to the court for relief respecting the controversy over its right of election under the sale. Julian v. Central Trust Co., 193 U. S. 93, 109, 112, 24 Sup. Ct. 399, 48 L. Ed. 629.

As respects jurisdiction to entertain the petition in question: It is the broad general rule that where a bill in equity is necessary to have a construction of an order or decree of a federal court, or to explain, enforce, or correct it, such bill may be filed in and entertained by such court, notwithstanding the parties interested in having such construction made would not, for want of diverse citizenship, be entitled to proceed by original bill of any kind in a federal court. Minnesota Co. v. St. Paul Co., 69 U. S. (2 Wall.) 609, 633, 17 L. Ed. 886; Brun v. Mann (C. C. A. 8) 151 Fed. 145, 80 C. C. A. 513, 12 L. R. A. (N. S.) 154; Lang v. Choctaw, etc., Co. (C. C. A. 8) 160 Fed. 355, 360, 87 C. C. A. 307; Hume v. City of New York (C. C. A. 2) 255 Fed. 488, 166

---

[5] In fact (though not a controlling consideration) the judge who made the foreclosure decree was still on the bench and passed upon the motion to dismiss the petition, as well as the motion of the Union Railway Company to strike out the answer of appellant, or to strike therefrom certain allegations.

C. C. A. 564; 1 Foster's Fed. Pr. (6th Ed.) § 51. As said in the St. Paul Case, supra, 2 Wall. at page 633 (17 L. Ed. 886):

"The question is not whether the proceeding is supplemental and ancillary or is independent and original, in the sense of the rules of equity pleading; but whether it is supplemental and ancillary or is to be considered entirely new and original in the sense which this court has sanctioned with reference to the line which divides the jurisdiction of the federal courts from that of the state courts."

It is true that in the St. Paul Case the bill held properly to be classed as dependent was filed by a party to the original cause; and none of the cases we have cited are on all fours with the instant case. But we think the principles they announce are controlling here. Indeed, it is said in the Choctaw Case, supra, 160 Fed. at page 360, 87 C. C. A. 312, that:

"A bill in equity dependent upon a former suit in the same court may be maintained by the purchaser under the decree or by any other party interested therein * * * to restrain, avoid, explain, or enforce the judgment or decree therein."

We can see no adequate reason, on either principle or authority, to deny the jurisdiction of the District Court to entertain the petition in question upon the record there existing.[6]

[3] It seems clear that the fact that final decree had been entered, sale made thereunder, and possession of the property passed to the purchaser furnished no bar to the jurisdiction of the court below to entertain the petition. The proceeding was not, strictly speaking, an intervention in the suit. There is, however, no inflexible rule forbidding the allowance of intervention, even after final decree (United States v. Northern Securities Co. [C. C.] 128 Fed. 808); but a proceeding to obtain a construction, correction, or enforcement of a decree presupposes the previous entry of final decree. A proceeding of the character of that before us is not one to enforce a lien upon, or to interfere with, the possession of the purchaser. Possession by the court was thus not necessary to jurisdiction. If it were, the lack of possession would equally deny jurisdiction in a state court.

We assume that the District Court had the right, in the exercise of its discretion, to refuse to entertain the petition and to remit appellees to their remedy elsewhere. It is enough that it had, as we think, full authority to entertain the petition, and did so.

[4] *The Merits.*—In our opinion the District Court correctly decid-

---

[6] As illustrating the universality of the general rule we have referred to: In Eichel v. U. S. Fidelity, etc., Co., 245 U. S. 102, 38 Sup. Ct. 47, 62 L. Ed. 177. jurisdiction to maintain a bill in equity to enjoin the prosecution of suits at law in the same court was held referable to the ground of jurisdiction in the suits at law, although that ground of jurisdiction did not exist in the equity suit. In Davis v. Martin (C. C. A. 5) 113 Fed. 6, 51 C. C. A. 27, where a court of the United States, in a suit for the foreclosure of a mortgage, had seized property through its marshal, for the purpose of selling it under the provisions of the mortgage, such court was held to have jurisdiction of a suit by a third party (a stranger to the original suit) claiming ownership of the property, to enjoin its sale, as ancillary to the original suit, regardless of the citizenship of the parties. Also compare Gaines v. Clark, —— App. D. C. ——, 275 Fed. 1017.

ed the merits of the controversy. The original contract made by the Indianapolis, Decatur & Springfield Railway Company contemplated the use of the depot and track facilities of the Union Railway Company only for a train service west of Indianapolis; that made by the Cincinnati, Hamilton & Indianapolis Railroad Company contemplated the use of such facilities only for a train service east of Indianapolis. There never has been physical connection between those two original roads, except through the facilities furnished by the Union Railway Company and its belt line. By the contract each of these two companies agreed to pay one rental, which then and now means in the aggregate two-thirteenths of the fixed rental. In 1902 the consolidated company became obligated to pay in perpetuity the two rentals. It is only by virtue of the rental contract, and the obligation of the consolidated company to pay two rentals, that the latter ever had a through line from Hamilton, Ohio, to Springfield, Ill. In 1906 the consolidated company contributed to the amendment of the original contract by causing its signing by each of its constituent companies. It continued to pay that rent without protest to the time of the foreclosure sale in 1915. Appellant expressly concedes the obligation of its predecessor so to do. Such was the situation, and such the legal obligation, of the consolidated company when the foreclosure sale was made.

Appellant is presumed, and we think was bound, to know this. The rental contract had become, in effect, but a single contract on the part of the consolidated company. Appellant, upon confirmation of the sale, went into immediate possession of the properties of the consolidated company, including the enjoyment of the Union Railway Company's facilities. In these circumstances, it is unnecessary to consider what would have been appellant's obligation had it repudiated the existing contract between its predecessor and the Union Railway Company. This it did not do. Nor need we consider what the result would have been had the respective lines originally owned by the Indianapolis, Decatur & Springfield Railway Company and the Cincinnati, Hamilton & Indianapolis Railroad Company been sold to separate purchasers. That, again, did not happen. The single question is: Did appellant, by virtue of the foreclosure sale, acquire the right to disavow the rental contract of one of its predecessors (made with reference to the line west of Indianapolis) and at the same time hold onto the contract made by the other of its predecessors (with reference to the line east of Indianapolis); and so, by paying one-twelfth of the fixed rental, instead of two-thirteenths, have the Union Railway service for the benefit of both original lines?

It is clear to our minds that this question must be answered in the negative. We think the description in the decree of sale, viz., "The contract dated [etc.] under which the tracks of the Union Railway Company are occupied in Indianapolis," meant the contract as it existed between the Union Railway Company and the consolidated company when the decree was made, and that the election provision (we assume it was in the form usual in railroad foreclosure decrees) gave the option of adopting or rejecting the contract in toto, but was not intended to confer the right to accept all the benefits and at the same time reject

a portion of the burdens conferred by it. Such construction would be unnatural and unreasonable. As Judge Peck well said:

"There was but one contract sold, although the railway company [the consolidated company] was bound thereto as to each of the parties to which it had succeeded. While the purchaser had a right to accept or reject the same, it had to take or leave the obligation of the railway company [the consolidated company] to the terminal company in full and as it then existed under said contract. It did not have the right to restore the status which had existed when its two ancestors in title were severally parties thereto, and elect to stand in the shoes of the one but not of the other. * * * Here there was an attempt to adopt the rights of one ancestor in title as to this contract and reject the rights of the other ancestor. Such was not the election required or permissible under the decree, and was ineffectual to operate as a rejection."

[5, 6] We see no force in the criticism that the petition states no cause of action. It does not contravene equity rule 37 (198 Fed. xxviii, 115 C. C. A. xxviii) that an intervention must be "in subordination to and in recognition of the propriety of the main proceeding." It recognizes the propriety of the main proceeding. It merely asks, in effect, that the decree be construed as not permitting the attempted election. The proposition that what the court below did was to construe the contract and not the decree overlooks the fact that the construction of the contract is necessarily involved in the construction of the decree. The court is presumed to have intended a just and reasonable, rather than an unjust and unreasonable, provision for election.

Whether or not the rental agreements were easements running with the land conveyed, and whether or not the mere purchase under the foreclosure decree amounted to an assumption of the rental contracts,[7] we are unable to assent to the contention that the petition shows no liability thereon, for the reason that it speaks of the two contracts as being binding upon the appellant and denied its right to reject either of them. The course of reasoning by which the correct result was reached is not highly important, and the conclusion stated is not weakened by Judge Peck's expressed view that the attempt to adopt the former rights of the Cincinnati, Hamilton & Indianapolis Railroad Company was ineffectual under the decree in the other foreclosure case. The argument that the Union Railway Company was not harmed by the election is beside the mark. Lack of prejudice is not shown by the fact that had there been an election to reject the entire contract the Union Railway Company might have lost two rentals instead of one. The record contains no suggestion that rejection in toto was ever contemplated. The inferences, so far as there are any, are to the contrary. The criticism that the petition does not assert that any limitation was imposed by the contract upon the use of the Union Railway Company's facilities is likewise beside the mark, in view of the conclusion that the contract contemplated by the decree, and the right of election contained therein, was the single contract of the consolidated company. It follows from these views that the court rightly overruled the de-

[7] See Union Depot Co. v. C., K. & N. Ry. Co., 113 Mo. 214, 20 S. W. 792; St. Joseph Union Depot Co. v. C., R. I. & P. Ry. Co., 131 Mo. 291, 31 S. W. 908; St. Joseph Union Depot Co. v. C., R. I. & P. Ry. Co. (C. C. A. 8) 89 Fed. 648, 32 C. C. A. 284.

murrer to the petition for alleged lack of showing of right to equitable relief.

[7, 8] In our opinion, the District Court did not err in striking out certain allegations of the answer. We see no merit in the proposition there asserted that by the decree in the suit for foreclosure of the Indiana, Decatur & Western Railway Company mortgage the court represented and held out to the purchaser that there had been no merger of the two rental contracts, or in the assertion that whatever title to the Indiana, Decatur & Western property was acquired by the purchaser under the refunding mortgage foreclosure was cut off by sale and foreclosure of the Indiana, Decatur & Western mortgage. We also see no force in the suggestion that the contract has been wrongly construed against the purchasing company because, as asserted, two specified railroads, coming in from one direction and going out in another, were required by the contract to pay but one rental for the Union Railway Company's facilities, and that in practice the contract has been construed, as regards others than appellant, as creating no limitation upon the use of the facilities, nor as increasing the fixed rental, but only as affecting the proportion of operating expenses on wheelage basis, nor that, as asserted, the share of the total fixed rental which, under the construction adopted below, the purchasing company would be required to pay is inequitable and oppressive, by reason of the small amount of business transacted and earnings made by it. There is no allegation that appellant received less favorable treatment than accorded to successors of other signatory companies, nor that it has been refused permission to extend its service in the same way that other railroads have been permitted to do.

[9] The assertion of delay, laches, and estoppel is well answered by Judge Hollister, who said:

"The facts rebut any suggestion of laches or of estoppel in pais. The position of the defendant has not only not been acquiesced in at any time, so far as the court can see, by the Indianapolis Union Railway Company or the other petitioners, but the defendant knew ever since the first payment of rental was due after the sale that the Union Railway Company was demanding two rentals. The defendant has not been thrown off its guard, or deceived or misled in any way. It made its large expenditures on its own risk. The bringing of this suit, October 24, 1916, was not an unreasonable delay."

[10] The District Court, having acquired jurisdiction for the purpose of determining the rights of the parties under the election provision, had, in our opinion, jurisdiction to award recovery for the sum necessarily found to be owing by appellant to the Union Railway Company under the construction adopted by the trial court, and on the principle that courts of equity "will not do justice by halves." Tayloe v. Merchants' Fire Ins. Co., 9 How. 390, 404, 13 L. Ed. 187; Eames v. Home Ins. Co., 94 U. S. 621, 24 L. Ed. 298; Camp v. Boyd, 229 U. S. 530, 552, 33 Sup. Ct. 785, 57 L. Ed. 1317; Springfield Co. v. Barnard Co. (C. C. A. 8) 81 Fed. 261, 263, 265, 26 C. C. A. 389. Indeed, appellant makes no suggestion to the contrary.

The order of the District Court is accordingly affirmed.